McCLELLAND
*vs.*
KAY.

there is a contest for a fund, or a decree to subject property claimed by appellants who are not the real debtors, and which appellee has a decree to subject to his debt. (*Wood v. Roman*, 5 *B. Monroe*, 145.)

---

## McClelland *vs.* Kay.

### ERROR TO FAYETTE CIRCUIT.

1. If a slave in the night, when it is so dark that he cannot be identified, be found stealing the property of a citizen, and when, from the circumstances, it could not be reasonably supposed that he could be apprehended, the citizen may lawfully shoot with the design to wound, but not to kill.

Chief Justice HISE delivered the opinion of the court.

ORD. PET.

Case 23.

July 4.

McClelland
*vs.*
Kay.

Case stated.

Sally Kay, an infant, by her next friend, Daniel B. Kay, sued the defendant James M. McClelland, charging in her petition, that the defendant, under certain circumstances specially stated, shot the plaintiff's slave in the thigh, with a gun charged with shot, and that the wound thus inflicted caused the death of the slave in a short time. She demands in damages, one thousand or twelve hundred dollars for value of the slave, and the amount of the physician's bill for attendance upon him. Upon the issue formed, and under the instruction of the court as to the law governing the case, there was a verdict and judgment against the defendant for ten hundred and fifteen dollars, in damages. The defendant moved for a new trial, because—1st. The court ought not to have sustained the plaintiff's demurrer to the defense presented in the second paragraph of defendant's answer. 2d. The court erred in the instruction given to the jury on the plaintiff's motion. 3d. The court erred in refusing the instructions asked by defendant. 4th. The verdict was not authorized by the proof in the case, or by the law of the case. 5th. The court erred in excluding from the jury important evidence offered by defendant.

If either of the grounds as stated, are made manifest by the record, then the judgment of the circuit court must be reversed and a new trial awarded. The facts of the case, as presented in the second paragraph in defendant's answer in substance, and upon which he relies for defense, are as follows: That shortly after midnight, the defendant being in bed, heard a noise amongst his poultry in the trees of his orchard, whereupon he arose from his bed, and taking a double-barreled shot gun, he went from his house to the place from whence the noise came, and there perceived three men, one in a tree, the other standing by it, and the third stationed off at some distance apparently to keep watch; that they were engaged in stealing the poultry of defendant; the person standing under and near to the tree was receiving the

fowls from the other, who was in the tree, and that the defendant, supposing himself to be at the distance of twenty-five yards from the thieves, and with the purpose merely of wounding one of them slightly, in order to his future identification, and with no intention of killing him, fired one barrel of his shot gun at the legs of the thief standing on the ground beneath the tree, believing at the time that his gun was loaded with small bird shot, with which he himself had charged it a short time before, and believing, that on account of the small shot with which he thought the gun was loaded, and the distance from which, as he supposed he fired at the thief, that no great injury would result, and that he would only slightly wound him in the lower extremities. But because he was nearer than he supposed, and because, without his knowledge, defendant's brother had on the day before fired off the loads of small bird shot with which the gun had been charged, and had re-loaded the same with large shot, and had replaced the gun in its usual position, without informing defendant of what had thus been done, the wound produced was much more serious than was expected, and contrary to the design and intention of defendant, caused the death of the slave. That the night was so dark that defendant could not discern whether the thieves were black or white men, and it was impossible to identify them. These facts, so relied upon, are derived from a voluntary narrative given by the defendant to the witnesses; from the brother of defendant, who proves that he re-loaded the gun as stated, and from the evidence of others who prove that the night on which the event happened was very dark. The question of fact as to the intention with which the defendant fired at the slave, depends for its elucidation upon the statements of the defendant himself, as composing a part of his narrative, which was, as a whole, given to the jury. Upon this state of case, as in substance contained and set forth in defendant's answer, if established by the evidence, the facts are sufficient in

McClelland
vs.
Kay.

1. If a slave in the night, when it is so dark that he cannot be identified, be found stealing the property of a citizen, and when from the circumstances it could not be reasonably supposed that he could be apprehended, the citizen may lawfully shoot with the design to wound, but not to kill.

law for the defendant's justification, and in such case the verdict of the jury, and judgment of the court, should have been in favor of defendant.

If a slave, though held and owned as the property of another, shall, in the night time, be found engaged in stealing the property of a citizen, upon his premises, under circumstances when he could not be identified, and when it might be reasonably supposed that he could not, with safety, be apprehended by the owners, in such case it is held by this court that the citizen might lawfully, in defense of his property, use the means of protection and defense as stated in defendant's answer, and unless in such case it be made appear that the killing of the slave was intentional, and not the result of mistake or accident: or in other words, if it should appear that the party had good reason to believe that the result of the shooting would not produce death, but only slightly wound the thief, and it be manifest that there was no actual intention to kill, then the owner of the property would not be subject to either criminal or civil responsibility. In this view it follows that the circuit court erred in sustaining the plaintiff's demurrer to the second paragraph of defendant's answer, it follows, also, that the court erred in giving, without qualification upon plaintiff's motion, the following instruction to the jury, to-wit: "That if the jury believed from the evidence, that the negro, George, was the property of plaintiff, and being on the premises of defendant with two others, and at the distance of about one hundred yards from defendant's house, engaged in stealing poultry of defendant's roosting in the open air, and the defendant hearing the noise among the poultry, got up, and taking his gun approached within ten or twelve feet of said negro, George, and without saying anything to said George, shot said George and killed him, that they must find for the plaintiff the value of the slave, &c." This instruction was under the facts and circumstances of the case as disclosed by the proof, entirely too peremptory; and inasmuch as it

was given without qualification, and inasmuch as the instructions asked by defendant, which would have qualified it, were refused, the jury were not allowed to consider the matters relied upon in defendant's answer, as furnishing any ground of excuse and justification, but were bound to find for the plaintiff. They were thus in substance told, whether the killing took place in the day or night; whether the defendant could or could not identify or apprehend the thief; whether he did or did not shoot with intent to kill, or whether he had or had not good reason to believe that the shooting would produce but slight and inconsiderable injury to the thief, yet they must at all events find for the plaintiff. The instruction was therefore misleading and erroneous, as given. Without at present giving any opinion as to whether the law of the case is accurately presented in the first and second instructions which were asked by defendant and refused by the court, we remark only, that upon the return of the cause, and a new trial of the case, the instructions given to the jury should be so qualified as to be conformable to the views of this court as herein expressed.

The opinion of this court, rendered in the case of *Gray v. Combs*, reported in *7th J. J. Marshall*, 478, furnishes some authority in favor of the principle, as asserted in this opinion, nay, it would seem that the opinion in that case extends the right of defense of property as against depredations attempted to be committed upon it by a slave, farther than is now done by this court. In that case, the right to defend property in a ware-house, by killing the depredators through the instrumentality of a spring gun, fixed with the intention of producing the death of the person who should attempt to enter the house, was recognized and asserted; in this case, where the attempt to steal the defendant's property was not made in a house of any kind, but in his orchard, we have not thought proper to decide that the owner of the property would be irresponsible in a civil action for dam-

ages, if he should intentionally kill the thief, unless under circumstances, at least, that would make it manifest that it was necessary, not only for the protection of property, but in resistance to such actual force as would present a case of necessary defense not only of property, but of the person of the owner, whilst engaged in an attempt to apprehend the thief.

Wherefore, the judgment is reversed, and cause remanded for a new trial, and further proceeding in conformity with this opinion.

ROBERTSON, HARRISON, and HUNT for plaintiff; ROBINSON and JOHNSON, KINKEAD and BRECKINRIDGE for defendant.