CASE 79.—PROSECUTION AGAINST WILLIAM WHITE FOR MURDER.—May 15.

# White v. Commonwealth

125    699
f135    594

Appeal from Boyd Circuit Court.

S. G. Kinner, Circuit Judge.

Defendant convicted of voluntary manslaughter and appeals. Reversed.

1. Homicide—Evidence—Admissibility—Self-Defense—Prior Difficulties—On a prosecution for murder, it appeared that defendant was with others in a saloon, when decedent entered and stated to one of defendant's companions that he was looking for trouble; that decedent then walked away to the end of the room, but that defendant became agitated, secured a revolver and commenced shooting, one of the shots resulting in the death of decedent. There was testimony that at the time the fatal shot was fired decedent was in a stooping position facing defendant, with one hand extended and the other behind his back, and the defense was self-defense, in that defendant apprehended an attack with a knife. Held, that it was error not to admit evidence that decedent had previously assaulted defendant, on one occasion with a club, and on another with a knife, and the general character of the injuries received by defendant, and that defendant avoided decedent whenever he could.

White v. Commonwealth.

2. Same—Instruction—Self-Defense—If when accused shot deceased he believed, and had reasonable grounds to believe, that he was in danger of death or the infliction of great bodily harm at the hands of deceased, and, if it was necessary or believed by the accused in the exercise of a reasonable judgment to be necessary to shoot deceased, he should be acquitted; but, on the other hand, if the accused, when he did not believe, or have reasonable grounds to believe, that his life or person was in danger did first willfully and feloniously assault deceased, and in so doing make the harm or danger to himself necessary or excusable on the part of deceased in his own necessary self-defense, defendant should not be excused on the ground of self-defense.

JAMES A. WILLIAMS for appellant.

POINTS RELIED UPON FOR REVERSAL.

1. The court erred in striking out the testimony of appellant at the end of the case, that Lane had cut him with a knife and that another time had assaulted him with a club.

2. The Court erred in allowing the Commonwealth, on cross-examination of apellant, to ask White if at the time Lane cut him with a knife he was not attempting to assault Lane with a meat cleaver.

3. The appellant having answered that he did not have a meat cleaver at the time, the court erred in allowing the Commonwealth to further interrogate the witness and make him admit that he had a meat cleaver just prior to that time.

4. Appellant having denied having the meat cleaver at the time, the Commonwealth prejudiced his substantial rights by undertaking to impeach and contradict him on this immaterial and collateral issue, by showing, by two other witnesses, that he did have a meat cleaver at the time.

5. The court erred in not allowing appellant to prove by several witnesses that they had observed that White was always trying to avoid Lane.

6. At the end of the entire case the court erred in orally instructing the jury that they should not consider anything that the appellant had said about being cut with a knife and attacked with a club by deceased, but should only consider that they had former difficulties.

7. The court erred when he struck out what defendant had said about being cut with a knife and attacked with a club and

White v. Commonwealth.

in not striking out what had been said about the meat cleaver, leaving same in the record.

· 8. The court erred in refusing to give appellant requests Nos. 1 and 2.

8. The court erred, in his request number three, on self-defense, in so qualifying it at the end as to virtually deprive appellant of his only defense,—self-defense.

10. The abuse of argument of the Commonwealth's attorney, in closing for the Commonwealth, was so serious as to prejudice the substantial rights of the appellant.

## AUTHORITIES CITED FOR APPELLANT.

Kennedy case, 14th Bush, 352; Bohannon case, 8th Bush, 483; Haverly v. Comth., 95 Ky., 36; Parson v. Comth., 78 Ky., 102; Oder v. Comth., 80 Ky., 32; Wharton, Crim. Evi. (8th Ed.), secs. 479-484, also 559; Gillett on Indirect and Collateral Evidence, sec. 90; 2 Elliott on Evidence, sec. 977; Kennedy v. Comth., 14 Bush, 341; Redmond v. Comth., 21 Ky. Law Rep., 331; O'Neal v. Comth., 27 Ky. Law Rep., 547; Carnes v. Comth., 27 Ky. Law Rep., 1205; Cook v. Comth., 86 Ky., 663; Bates v. Comth., 13 Ky. Law Rep., 132; Gilbert v. Comth., 21 Ky. Law Rep., 544 Gargill v. Comth., 12 Ky. Law Rep., 149; Flint v. Comth., 81 Ky., 186; Brown v. Comth., 13 Ky. Law Rep., 852; Mount v. Comth., 27 Ky. Law Rep., 788; Baker v. Comth., 20 Ky. Law Rep., 1784; Howard v. Comth., 67 S. W. R., (Ky.), 1003.)

N. B. HAYS, Atty. Genl. and CHAS. H. MORRIS for appellee.

The facts show that appellant murdered Lane. Every witness in the card game; every witness in the saloon agree as to the manner of the killing. No one corroborates White's story at all. The best he can do is to swear that he thought Lane was coming at him with a knife. No one bears him out in his behalf. He shows previous threats and difficulties, and the bad reputation of deceased. The nearest he comes to bolstering up his self-defense story, is the testimony of witness Fortune, wherein he says that he saw Lane go toward Darmon's saloon, and that he pulled out of his pocket, and opened, a knife

We think the jury certainly tempered justice with mercy, in coming to a conclusion on a verdict. It is a clear case of murder, with a verdict for manslaughter.

OPINION OF THE COURT BY JUDGE SETTLE—Revers-
ing.

The appellant, William White, was indicted and
tried in the Boyd circuit court for the murder of
George Layne, whom he shot and killed in the city of
Catlettsburg. A verdict was returned by the jury
finding him guilty of voluntary manslaughter and fix-
ing his punishment at confinement in the peniten-
tiary for 10 years. He complains that numerous
errors were committed, to his prejudice, by the lower
court on the trial, and asks a reversal of the judgment
of conviction on account thereof.

The homicide occurred in Damron's saloon under
the following circumstances: Appellant and three
other persons, Allen, Galloway, and Cassaday, were
sitting around a table in a room belonging to and
adjoining the saloon, engaged in a game of cards.
Others were present looking at the game. Harry
Osborne, bartender, and Martin, a negro porter, em-
ployed in the saloon, were in the barroom. Layne,
the deceased, walked into the saloon, and back to
where the game of cards was in progress. He
accosted Galloway, saying, "R. L., I am hunting for
trouble." Galloway making no reply, Layne said to
others sitting at the table: "I am hunting for trouble,
how about you?" One of the party addressed then
said to Layne, "I am hunting to keep away from it,"
to which Layne replied, "So am I; we will call it off,
then." After this remark Layne turned to Osborne,
a bystander, and said, "Come back here; I want to
see you a minute." He and Osborne then walked
back to a urinal in the rear of the room and began a
conversation; Layne standing with his right hand

against the wall and his back or side toward the card party. At this juncture, appellant, who had not been addressed by Layne, jumped from his chair in great agitation, rushed to and behind the bar, and took from a drawer two 38 Smith & Wesson pistols, one in each hand. The barkeeper, Harry Osborne, quickly caught appellant, and attempted to take the pistols from him or hold him. In struggling to free himself from Osborne appellant discharged one of the pistols twice, or each of them once. Osborne, fearing he would be shot, released appellant and the latter ran back toward the urinal, firing as he went two shots from his pistols into the ceiling. He encountered Layne at or near the urinal, and immediately shot at him three times. One of the shots missed Layne, one struck him on the finger of the right hand, and one in the top of the head, which passed through the brain, and, ranging downward, lodged at its base. This shot proved fatal, and Layne's death almost immediately followed. Those in the cardroom, both players and bystanders, being frightened by the scuffle between Osborne and appellant behind the bar and the discharge of the pistols, escaped from the building by the main or a side entrance before Layne was shot, and only Martin, the porter, saw appellant when he reached Layne at the urinal. According to Martin's testimony at the time appellant shot at Layne, the latter had his head and body in a stooping position in the direction of appellant, with one hand extended and the other raised to his head, or in front of his face. This position of Layne's explains why he was shot in the top of the head and also tends to prove that the shot that struck one of the fingers of his right hand was the same that entered his head. Appellant claims to

have done the shooting in self-defense, and that at the time he shot Layne the latter was approaching him in a stooping or crouching attitude, with one hand extended as if to take hold of him and the other behind his body, containing, as appellant supposed, a knife. It was discovered, however, after he was dead that the knife was in his pocket unopened.

The evidence introduced in behalf of appellant conduced to prove that Layne was a man of violent, vindictive temper, and quarrelsome disposition when drinking, and that the night before his death was spent by him in prison for drunkenness and disorderly conduct; that his favorite weapon was the knife, and this weapon had been used by him with terrible effect upon appellant more than a year previous to the homicide, at which time the appellant sustained at his hands numerous cuts and stabs, one of which penetrated and cut off a piece of his liver and came near causing his death; that after a partial recovery from the long and dangerous illness caused by these wounds appellant happened to meet Layne on the street, and the latter in a threatening manner asked him if he had enough, and whether he thought himself as good a man as he (Layne) was. It further appeared from appellant's testimony that there had been a bad state of feeling between Layne and appellant for years, an d that the former, after the re-encounter in which appellant was wounded, had assaulted him with a club and frequently threatened his life. Indeed, he continued to threaten him down to within a few days of the homicide. On two occasions Layne told Mrs. Clara Stock that he had tried to finish appellant once and had cut the point of his liver off, and he would never die satisfied until he finished him and could hold his liver up on the point

of a knife before appellant's eyes.    Many of these threats were communicated to appellant by the persons who heard them made.    It is manifest from the evidence that appellant was not the physical equal of Layne, and that he had been intimidated by Layne, and was very much afraid of him.    This was shown by his conduct when Layne approached the table where he and others were playing cards, for the witnesses then present all agree that, when Layne went to the card table, appellant became pale and so agitated that he could not manage the cards that were held in his hand.    We will not take time to consider all the grounds urged by appellant in the lower court for a new trial, but will confine ourselves to the several matters assigned as error by counsel in the oral argument heard by us.

It appears that the lower court admitted a large part of appellant's testimony as to the attack made on him by Layne with the knife and at another time with a club a year or more before the homicide, but later, and before the case was submitted to the jury, excluded all of it from their consideration, except the bare fact that there had been previous difficulties between them.    It is insisted for appellant that this ruling of the trial court was error, and in that conclusion we concur, for the excluded testimony, as well as the threats of Layne and his bullying and contemptuous manner toward appellant when they chanced to meet, was admissible as tending to show his animus toward appellant, and whether or not the latter at the time of the homicide had reasonable grounds to believe and did in good faith believe that he was in peril at the hands of Layne.    In Kennedy v. Commonwealth, 77 Ky., 340, this court, speaking through Judge Cofer, said: "Threats, menaces,

assaults, lying in wait, carrying arms, the character of
the deceased for violence or lawlessness, the circum-
stances of the meeting, and any other fact tending to
show that the slayer was in peril at the time of the
homicide, or that he had reasonable grounds upon
which to believe he was in such peril, may all be
given in evidence for the purpose of showing that
there were grounds to believe he was then in danger;
but if, notwithstanding all these things, he had no
reasonable ground for believing he was then in dan-
ger, they will not excuse him on the ground of self-
defense, although they may have justified him in
believing he would be in such danger at some future
time. This is in consonance with the philosophy of the
law of self-defense, which is based on necessity, real
or apparent. When there is no necessity or apparent
necessity to slay an adversary to save one's life or
person from great bodily harm, there cannot, in the
nature of things, be a right to kill in self-defense.''
We do not find that this court has in any of its later
decisions, restricted the salutary rule announced in
the case supra. On the contrary, it has repeatedly
reaffirmed it. Parsons v. Commonwealth, 78 Ky.,
102; Campbell v. Commonwealth, 88 Ky., 402, 11 S.
W., 290, 10 Ky. Law Rep., 975, 21 Am. St. Rep., 348;
Haverly v. Commonwealth, 95 Ky., 36, 15 Ky. Law
Rep., 285, 23 S. W., 664. We do not mean to say that
it would have been proper for the court to have
allowed evidence as to all the details of the cutting
and wounding of appellant by Layne, or of the assault
made upon him by the latter with a club, but the fact
that both assaults occurred, the general character of
the injuries received by appellant at the hands of
Layne, and the further fact that the latter was the
attacking party should have gone to the jury in evi-

dence. We are also of opinion that the court should have admited the testimony showing appellant's avoidance of Layne; that is, that whenever Layne came about him he would invariably walk away.

It is further contended by appellant that the lower court erred in instructing the jury as to the law of self-defense. The objection is as to the qualification contained in the latter part of the instruction. We do not approve the qualification as expressed, but think it should be so stated as to make the instruction as a whole read as follows: "If the jury believe from the evidence that at the time the accused shot the deceased (if they should believe from the evidence beyond a reasonable doubt that he did shoot and kill him) he believed and had reasonable grounds to believe that when he was then and there in danger of death or the infliction of great bodily harm upon him at the hands of the deceased, and that it was necessary, or believed by the accused in the exercise of reasonable judgment to be necessary, to shoot the deceased in order to avert that danger, real or to the deceased apparent, then they should acquit the accused upon the ground of self-defense and apparent necessity. On the other hand, if the jury shall believe from the evidence beyond a reasonable doubt that the accused, when he did not believe, or have reasonable grounds to believe, that his life or person were in danger at the hands of the deceased, did first willfully and feloniously assault the deceased with a pistol, and in so doing make the harm or danger to himself, if any there was, necessary or excusable on the part of deceased in his own necessary self-defense, they should not in that event excuse the accused on the ground of self-defense." O'Day v. Commonwealth,

99 S. W., 937, 30 Ky. Law Rep., 848.   The other instructions given by the court do not appear to be objected to, but a careful examination of them convinces us that they are correct.   We find nothing in the remarks of the commonwealth's attorney to the jury that merits the complaint of counsel.

For  the  reasons  indicated,  the  judgment  is reversed, and cause remanded for a new trial consistent with the opinion.

JUDGE HOBSON delivered the following extension of opinion:

Where  the  defendant  introduces  proof  as  to  an assault by the deceased on him, the Commonwealth may show that the deceased did not so assault the defendant, and to this end may show what did occur at the time referred to.   But the proof should be limited to the res gestae and much detail should be avoided.   The court should charge the jury that the evidence is not admitted to show who was to blame in that difficulty, and is only to be considered by them on the question whether at the time of the homicide the defendant believed, and had reasonable grounds to believe, he was then and there in danger of death or great bodily harm at the hands of deceased.

The opinion is extended as indicated.