## McClerkin v. Commonwealth.

(Decided November 4, 1927.)

### Appeal from Floyd Circuit Court.

1. Homicide.—In murder prosecution, where peace officer had been shot in melee and question was as to who had fired fatal shot, evidence of defendant's guilt held sufficient to go to jury.

2. Criminal Law.—Although accused denies all participation in homicide, yet, if there is evidence establishing his guilt and other evidence, whether introduced by commonwealth or accused, tending to show facts from which jury might reasonably infer that accused acted in self-defense, or in sudden heat and passion, or in sudden affray and without previous malice, instructions on manslaughter and self-defense should be given.

3. Criminal Law.—In murder prosecution, where there was evidence that several shots were fired by officers in direction of accused's house, and it was not clear from evidence when accused began to shoot at officers, one of whom was killed, court should have given instructions on manslaughter and self-defense, since if accused did not fire until after officers began shooting toward his house he may have had right to shoot in self-defense, and under evidence this was question for jury, or jury might have concluded that because of firing accused acted in sudden heat and passion, or in sudden affray and without previous malice.

O. C. HALL for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

This is an appeal from a judgment convicting appellant of the murder of Tom Blackburn, and fixing his punishment at life imprisonment.

The homicide occurred at a coal camp near Garrett, in Floyd county, on the night of October 31, 1926. Just prior to the homicide Blackburn, the peace officer, and Verlie Banks were looking after some oil tanks of the coal company. While there, they heard some shooting at

the coal camp. Arthur Conley ran up and informed them that there was trouble at the camp. He and the peace officers then went to the home of appellant, a double house, one side of which was occupied by appellant, the other side by a negro by the name of Tucker. The officers entered appellant's home and searched a number of people there. They were then informed that the shooting occurred at house No. 18, which faced appellant's home some 30 feet away, and which was occupied by Willie Daniels and another family of negroes. Before the arrival of the officers Tucker was over at house No. 18, raising a disturbance and doing some shooting. Daniels had crossed over to appellant's house to get appellant to go for Tucker, as Tucker and he were friends; and was at appellant's house when the officers arrived. After the officers had left appellant's home and had gotten about half way to the house occupied by Daniels, the firing began. Tucker was standing outside appellant's home and was firing with a rifle. The officers were firing at Tucker and in the direction of appellant's house. In the melee Tucker and Blackburn were killed. Banks was unable to say who killed Blackburn, but was confident that he did not do it. After the shooting Banks and others searched appellant's house and found two pistols, a .44, which shot lead balls, and a .45, which shot steel or copper jacketed balls. The pistols had the appearance of having been recently fired, and the .44 had six empty shells in it.

Willie Daniels testified that he was at appellant's house when the shooting occurred. After the arrival of the officers he saw appellant and his wife go out on the porch, and after the shooting was over saw appellant go in with two pistols. The shooting occurred while appellant was out on the porch, and he saw appellant take aim with one of the pistols. Arthur Conley saw the officers come out of appellant's house and start across to house No. 18. He saw a man and woman come out on the porch of appellant's home. The man shot, and the blaze went towards where Blackburn was standing. So far as he saw, Blackburn did no shooting and Banks was not shooting toward Blackburn. On the other hand, appellant denied doing any shooting and testified that he was in the house all the time the shooting was going on. His state-

ment was corroborated by other negroes who were present at the time.

Manifestly, there is no merit in the contention that the evidence was insufficient to connect appellant with the homicide. There was evidence that a man and woman were on the porch, that the man was firing in the direction of Blackburn, that the couple on the porch were appellant and his wife, that after the shooting appellant went into the house carrying two pistols, and that these two pistols had been recently fired. In the circumstances, it was for the jury to say whether they believed appellant and his witnesses, or the witnesses for the commonwealth.

The next contention is that the court erred in not instructing on manslaughter and self-defense. It is argued on behalf of the commonwealth that appellant was not entitled to such instructions, as he defended on the sole ground that he was in the house and did no shooting. It seems to us, however, that although the accused may deny all participation in the crime, yet, if there be evidence establishing his guilt, and other evidence, whether introduced by the commonwealth or the accused, tending to show facts from which the jury might reasonably infer that the accused acted in self-defense, or in sudden heat and passion, or in sudden affray and without previous malice, these phases of the case should be presented to the jury by appropriate instructions. That several shots were fired by the officers in the direction of appellant's house is fairly deducible from the evidence. It is not clear from the evidence when appellant began to shoot at the officers. If he did not fire until after the officers began shooting toward his house, then he may have had the right to shoot in self-defense, and under the evidence this was a question for the jury. Also, the jury might have concluded from the evidence that because of the firing toward appellant's house he acted in sudden heat and passion, or in sudden affray and without previous malice. We are therefore of the opinion that the court should have given a manslaughter instruction, and also an instruction on self-defense, with the usual qualification that if the jury believed from the evidence, beyond a reasonable doubt, that the accused at a time when he did not believe or have reasonable grounds to believe that he was then and there in danger of death or great bodily harm at the hands of the deceased or Banks,

brought on the difficulty by first willfully and feloniously shooting at the deceased or Banks, and in so doing made the danger to himself excusable on the part of the deceased or Banks, in his or their own necessary self-defense, they should not acquit the accused on the ground of self-defense. White v. Commonwealth, 125 Ky. 699, 102 S. W. 298, 1199, 31 Ky. Law Rep. 271, 720.

This conclusion makes it unnecessary to determine whether the court erred in refusing a continuance.

Judgment reversed and cause remanded for a new trial consistent with this opinion.