## Commonwealth v. Beverly.

(Decided January 20, 1931.)

36

J. W. CAMMACK, Attorney General, JAMES M. GILBERT, Assistant Atorney General, and THOMAS E. NICKEL for appellant.

NORMAN W. BOWMAN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Certifying the law.

This appeal involves a declaration of the law respecting the right of a citizen to kill another when apprehended in the act of stealing his chickens. The appellee, John Beverly, was placed upon trial for the murder of Warren Wilburn. The jury having failed to make a verdict, the commonwealth asks for a certification of the law; insisting that the instructions were more favorable to the defendant than he was entitled to have given.

The evidence introduced by the commonwealth consisted of testimony of the finding of Warren Wilburn,

wounded by a pistol bullet in the back, lying across the dead body of Dee McGuire just within the driveway of appellant's barn; of an admission of the defendant that he had shot him; and of a dying declaration in which Wilburn stated that he and McGuire were passing through the defendant's barn to the home of another to go fox hunting when Beverly raised up and shot McGuire with a shotgun, and that "he jerked his pistol and said, 'I'm going to kill you,' and I said 'Mr. Beverly, you haven't got anything against me have you,' and he said 'I'm going to kill you,' and I said, 'you killed that fellow' and then he shot me, and I was not in any of his buildings but was in front of the building. When I fell he shot at me again and he jumped out of his wagon and run around the building and shot at me again and said 'I'm going to finish you.' "

Wilburn died in a hospital at Portsmouth, Ohio, about a week after he was shot.

The defendant testified in substance that he had been losing chickens while attending church services, and on this evening he started with his family to church, passing the home of Wilburn, who was in his yard cutting kindling, and who declined Beverly's invitation to accompany him to church. He went on a short distance, and then he came back by a near way through the fields, and secreted himself, armed with a shot gun and pistol, in the bed of a wagon stored in the driveway of his barn. On one side of the driveway was a crib and the other a partly open shed in which his chickens roosted. After a short time, two men came into the driveway and chicken shed. One lifted the chickens and handed them to the other who placed them in a sack. After three chickens of the value of $1 each had been so taken, the defendant raised up and shot into the chicken shed. Some one commenced to holler, "Don't shoot me, Mr. Beverly." While he continued to holler, the defendant jumped out of the wagon, put his pistol through an opening, and shot four times into the chicken shed. He did not shoot after the men came out of the chicken roost, but continued firing while they were calling to him not to shoot, for he "was expecting a shot from him," and because he "felt in danger," as "thieves generally go armed," although he saw no weapon in the hands of either men, and, so far as he knew, they were not armed.

The court gave in the usual form instructions on murder and voluntary manslaughter based upon sudden affray or sudden heat and passion. By instruction No. 3 he advised the jury, in substance, that, if they believed from the evidence beyond a reasonable doubt that Wilburn and McGuire had gone in the nighttime into the defendant's building near to his dwelling in which he then resided with his family, and that the defendant believed, and had reasonable grounds to believe, from their conduct and conversation that they were then and there stealing his chickens of a value of more than $2 (a statutory felony), he (the defendant) had the right to use such force as was necessary, or as he believed in the exercise of a reasonable judgment to be necessary, to protect his property, or to protect himself from death or great bodily harm, or both, at the hands of Wilburn or McGuire, or both, or to him apparently impending at their hands, even to the extent of shooting and killing any person so engaged; and, if in doing so he shot and killed Wilburn, he was justified, and should be acquitted on the ground of defense of his property or his person, or both, or the apparent necessity therefor.

In instruction No. 4 the court advised the jury that a person has the right to kill one actually engaged in the commission of a felony on his property in order to protect it and to prevent the felony; that the stealing of chickens of a value of $2 or more is a felony in this state; "but no one has the legal or even the moral right to shoot or kill another person merely because such person comes in the day or night to the home or outbuildings of another or trespasses upon his premises without his consent or commits any offense which is not a felony."

Instruction No. 5 defined the terms used, and No. 6 related to reasonable doubt, following the approved form.

The commonwealth asserts these instructions are not applicable, as there was no evidence whatsoever showing that the deceased men or either of them had knowledge of the defendant's presence or that they were armed or made any threat or in any way undertook to do a hostile act or any harm to the defendant; that, on the contrary, they were taken wholly unawares, and were shot, at least Wilburn, while he was crying out to the defendant not to shoot him; that there was no robbery, housebreaking, or attempted crime other than a trespass

and simple larceny, to prevent which the law does not permit the taking of human life. It is further submitted that, since the defendant did not undertake to arrest or use other effort to prevent the statutory felony of chicken stealing, he was not authorized to shoot and kill the offenders in order to prevent the commission of that crime. The defendant has filed no brief.

It is well established law that no provocation whatever can render homicide justifiable or excusable. It can only reduce it to manslaughter. But it appears to be the sound rule that one who is without fault may shoot and kill another if it be necessary, or apparently necessary, to prevent the commission of a felony on the person or habitation, or any other felony involving violence or the element of potential danger to the person, such as rape, arson, burglary, and robbery. This conception of right is in recognition of a law of sublime origin and more imperial authority than any human code. We accept human nature as God has made it. However, the law does not justify the taking of human life to prevent a mere trespass without felonious intention, nor to prevent a felony not involving the security of the person or home or in which violence is not a constituent part. The state does not permit a citizen to adjust such wrong by so extreme a method. One is permitted to resist or oppose force with force, and to resort to such means not endangering human life or great bodily injury as may be necessary, or apparently necessary, in order to prevent the trespass and to remove the trespasser from his premises, or to prevent the taking, injury, or destruction of his property.

It is not every right of property or every wrong that may rightfully be redressed by such extreme remedies. One may not kill because he cannot otherwise effect his object, although the object sought to be effected is right and fully justifiable in law. When one so acts in such cases—presupposing, as they do, the absence of force or violence by the wrongdoer—he manifests a culpable recklessness in his wanton disregard of humanity and social duty in taking, or endeavoring to take, the life of a fellow being in order to save himself from a comparatively slight wrong. He assumes the peril of using excessive or unnecessary means.

The subject of homicide committed in prevention of a felony or trespass is exhaustively treated in Stacey v.

Commonwealth, 189 Ky. 402, 225 S. W. 37, 25 A. L. R. 490. Our domestic cases are cited and discussed there.

There may be added as pertinent to the instant case McClelland v. Kay, 53 Ky. (14 B. Mon.) 103, which was a civil action to recover damages for the death of a slave (we had no criminal appeals prior to 1854), shot while stealing chickens from a tree in an orchard. It was written:

> "If a slave in the night, when it is so dark that he cannot be identified, be found stealing the property of a citizen, and when, from the circumstances, it could not be reasonably supposed that he could be apprehended, the citizen may lawfully shoot with the design to wound, but not to kill."

There might also be added the subsequent cases of Howard v. Commonwealth, 198 Ky. 453, 248 S. W. 1059, and Flynn v. Commonwealth, 204 Ky. 572, 264 S. W. 1111.

Another case of special interest and application is State v. Terrell, 55 Utah 314, 186 P. 108, 25 A. L. R. 497. The defendant had pens and sheds near his home in which he kept and raised rabbits for commercial purposes. Having missed some of his property, he concealed himself with a gun in one of the sheds, and, upon discovering some one in another, fired without warning, and shot a 12 years old boy in the legs. He claimed that he did not shoot to kill but to disable the intruder in order that it would lessen his (the defendant's) physical danger. The Utah statute provided that the breaking and entering into such building was burglary in the second degree, a felony. It was pointed out in the opinion that as a matter of law in any given case homicide or an assault with a deadly weapon cannot be justified, unless in the necessary defense of habitation, property, or person, and that, if the necessity or reasonably apparent necessity fails, the right to invoke this rule of law also fails.

This case and the Stacey opinion are elaborately annotated in the American Law Reports, and the full law on the subject as to entire justification may be found there.

The several cases on the subject only present the rule as above stated that one, believing, or having reasonable grounds to believe, that a trespass or a felony, not having the element of force, violence, atrocity, or the in-

vasion of the home, was being or was about to be committed, may use such force as is necessary, or as may appear to him acting in good faith and upon reasonable grounds to be necessary, to protect his property short of killing or inflicting great bodily harm. They merely declare that, if he does use such excessive force, his act is not justifiable under the law. It is said in a few cases (notes of which are to be found in the A. L. R. citation, supra) that, if death is the result, one is guilty of murder or manslaughter. It seems to us that the act is to be classed as are other instances where there has been a reckless use of deadly weapons—the unlawful, intentional killing of another without malice. Blackstone; Commonwealth v. Saylor, 156 Ky. 249, 160 S. W. 1032. It is for the jury to judge the degree of culpability by fixing the punishment within the minimum and maximum penalties provided by law.

Upon this theory is based the modern rule that, if a homicide results to a culprit whom it was intended merely to punish or deter from the commission of an offense by wounding him by the discharge of a spring gun, the person responsible is guilty of manslaughter. 13 R. C. L. 853; Pierce v. Commonwealth, 135 Va. 635, 115 S. E. 686, 28 A. L. R. 864.

The same rule with respect to the use of force by a citizen under circumstances we have under consideration governs the rights of an officer of the law relating to the arrest or recapture after escape of one who has committed a misdemeanor, where there is no forceful resistance to him. Dilger v. Commonwealth, 88 Ky. 550, 11 S. W. 651, 11 Ky. Law Rep. 67; Stephens v. Commonwealth, 47 S.W. 229, 20 Ky. Law Rep. 544; Smith v. Commonwealth, 176 Ky. 466, 195 S. W. 811; Hickey v. Commonwealth, 185 Ky. 570, 215 S. W. 431. And in Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517, where there was evidence tending to show that an officer had deliberately shot a misdemeanant in the back as he was running, in order to prevent his escape, this court directed that upon another trial the jury should be instructed that the officer had no right to shoot the prisoner, and that, if he fired the shot intending to hit him, and thus without malice aforethought had killed him, he was guilty of voluntary manslaughter. There was also involved in that case the claim that the officer had shot without intending to hit the man, and an instruction on both voluntary and involuntary manslaughter, based upon the reckless use

of firearms, was authorized. But that excuse or mitigation does not enter into this case, for the defendant expressly stated that it was his deliberate purpose to shoot the deceased.

Because of the variant elements and conditions which may be presented and the shadowy lines which of necessity must be drawn, each case of this character must stand more or less to itself and the rules applied to the particular circumstances, care being taken to distinguish the doctrine which recognizes justification in some instances and denies it in others, as herein pointed out.

In making application to the facts disclosed on this trial, the court concludes that the instructions on murder and on manslaughter, based upon the theory of heat and passion or sudden affray, were properly given. But instructions No. 3 and 4 were too favorable to the defendant. In place of them, the court should have instructed that the jury might find the defendant guilty of voluntary manslaughter upon the idea that he had used more force than was necessary or reasonably necessary to prevent the commission of the felony described and to protect his property. Upon another trial, with the facts being the same, the instructions may be in the following form:

"The taking and carrying away of chickens or other fowls of the value of $2.00 or more without the consent of the owner with the intent to convert the same to the use of the taker, and to deprive permanently the owner of his property therein, is a felony.

"The court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the defendant, in this county and before the finding of the indictment herein, did willfully shoot the deceased with a pistol, a deadly weapon, from which he died within a year and a day; and if you further believe from the evidence that at the time he did so the deceased, Wilburn, and his companion McGuire, acting in concert, were engaged in the act of committing the felony aforesaid, or that said Wilburn was so doing, and that the defendant without malice aforethought, or not in a sudden affray or in sudden heat and passion, or not in self-defense (as set out in Instructions Nos. 1, 2 and 4) shot and killed the deceased solely to protect his property and to prevent said Wilburn and McGuire, or said Wilburn,

from committing the felony as aforesaid, then you are authorized to find the defendant guilty of voluntary manslaughter, a degree of the offense charged in this indictment, and fix his punishment at confinement in the penitentiary for not less than two nor more than twenty-one years, in your discretion."

The defendant was entitled to an instruction upon self-defense, carrying the idea that he had shot in good faith and upon reasonable grounds to apprehend imminent danger to his life. Its form upon another trial may be as follows:

"Although the jury may believe from the evidence beyond a reasonable doubt that the defendant shot and killed Warren Wilburn under the circumstances stated in any of the foregoing instructions, yet if you shall further believe from the evidence that at the time he, the defendant, had reasonable grounds to believe and in good faith did believe he was then and there in imminent danger of death or of receiving great bodily harm at the hands of the said Wilburn, and that it was necessary or was believed, in good faith, by the defendant in the exercise of a reasonable judgment under the circumstances to be necessary so to shoot and kill the deceased in order to protect himself against such danger, real or to the defendant apparent, then you will find the defendant not guilty on the ground of self-defense or apparent necessity."

The foregoing certifies the law of the case.
Whole Court sitting.