## Adams v. Commonwealth.

March 10, 1950.

Jim Sowards, Judge.

Coldiron, Warnock & Coldiron for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE LATIMER—Reversing.

Floyd Adams was convicted of the crime of willful murder and sentenced to life imprisonment. He appeals.

Appellant, a coal miner in Floyd County, apparently on account of health, purchased a farm in Greenup County with the intention of moving thereon and making it his home. He moved his family to the farm and continued for a while to commute between the farm and the mine where he worked in Floyd County. Being of the opinion that this was too much of a hardship, he decided to move back to Floyd County. He thereupon rented his Greenup County house and a portion of the surrounding ground to Millard Wampler. Wampler moved onto the farm and took possession of a small portion of it. In 1949, appellant developed tuberculosis and was discharged from his employment. He then returned to

Greenup County and demanded possession of his property, which Wampler refused to surrender. Appellant then instituted forcible detainer proceedings to regain possession. He failed in this and Wampler retained possession of the house for the remainder of the year. Adams then rented a house on an adjoining farm, into which he moved his family. Immediately thereafter he commenced the construction of a small three room structure on his farm, about 100 to 150 feet from the house in which Wampler lived, where he intended to reside until the Wampler lease expired. This, apparently, angered Wampler. This temporary structure was completed and on August 1, 1949, appellant moved, with his family and possessions, into the house.

On this same day it appears that Wampler went to the county seat where he became intoxicated, in fact, so drunk that he got down in the street. A friend and neighbor brought Wampler to the home of a neighbor named Greathouse, where Wampler's wife and children were waiting for him. When the Wamplers left the Greathouse home to go to their own home, a daughter ran ahead to hide the shotgun and the axe. It appears that when Wampler became intoxicated he was quarrelsome, dangerous, and violent, so much so that, when his family learned he was coming home intoxicated, they would hide the shotgun, axe, and other weapons.

This daughter testified that it had been her custom, for a period of at least 9 years, when her father came home intoxicated, to hide the gun and axe.

Wampler's wife testified that when she and her husband reached home, she went into the kitchen to prepare the evening meal, and that pretty soon thereafter she heard two shots; that she looked in the room where she had left her husband but that he was not there; and that she then went to the door on the porch where she saw her husband fall with blood on his face and his body. He was then dead or in a dying condition. She heard no words between her husband or anyone else.

The Sheriff of Greenup County stated that when he arrived at the Wampler home, which was about 10:00 o'clock that night, he found Wampler dead on the back porch. With the aid of a flashlight he went out the pathway between the Wampler house and the Adams house and found blood in and along the path; that this blood

was in evidence to about 10 or 12 steps from the Adams house; and that he found a .12 gauge shotgun in the weeds behind the Wampler smokehouse within two or three feet of the path where the blood was found. However, the daughter testified that she had hidden the gun behind the smokehouse and possibly at about the place where it was found.

Appellant and his wife both testified that they had retired for the night; and that the wife was first aroused by loud and boisterous language in the yard of the Wampler home. They both arose from bed. Appellant said he saw Wampler with a shotgun coming toward his house. Appellant then procured his shotgun and stood at the window and watched Wampler approaching, using loud, vulgar and threatening language toward appellant and his family. Upon reaching a point about 8 or 10 feet from the house, Wampler said: "If you don't come out I am coming in after you." Wampler continued walking toward the house demanding that appellant come out, and advanced to a point immediately in front of the window with his shotgun in hand. At this time appellant fired two shots. The first discharge hit Wampler in the face; the second in the right shoulder. Wampler then returned to his home along the pathway, as evidenced by the blood thereon. He died soon thereafter.

Upon the above evidence, appellant was convicted.

He here urges four grounds for reversal: (1) Error in admonishing the jury as to the testimony of the absent witness, Allen Hicks, and referring to same as an affidavit for continuance. (2) Such excessiveness of verdict as to indicate passion and prejudice. (3) Misconduct of the Commonwealth Attorney. (4) Failure to give the instruction on voluntary manslaughter.

We shall discuss the last ground first. In looking at this question we note, first, from the evidence of the family of the deceased man, that he was a dangerous and violent man when intoxicated, so much so that the family would hide the gun and axe and other weapons when Wampler came home under the influence of liquor. On the day of the shooting, Wampler was intoxicated to such an extent that he got down in the business district of Greenup. Upon his return home his condition was such that the daughter testified she hid the gun and the

axe. Aside from appellant and his wife, no one saw the shooting. While in such condition as would justify the family in hiding the gun and the axe, Wampler proceeded to, or close to, the house of appellant. Appellant and his wife say that he had a gun; that he was cursing and threatening them and told appellant if he. didn't come out that he would come in and get him. Such, no doubt, was sufficient to anger defendant and generate sudden heat and passion sufficient to reduce the degree of his crime from willful murder to voluntary manslaughter, and it was error for the court not to give such instruction. Hornsby v. Commonwealth, 305 Ky. 747, 205 S. W. 2d 338; Bowlin v. Commonwealth, 94 Ky. 391, 22 S. W. 543; McClerkin v. Commonwealth, 221 Ky. 689, 299 S. W. 570; and Commonwealth v. Beverly, 237 Ky. 35, 34 S. W. 2d 941. For failure to give the voluntary manslaughter instruction, the cause will have to be reversed.

Under the condition of this record, which shows failure to object seasonably, we could not justify a reversal on any one of the other alleged grounds. We will say, however, that upon another trial, the court should correct the admonition to the jury and leave out that portion relative to an affidavit of continuance, and the Commonwealth Attorney should not ask appellant again such questions as "Did you shoot a man up in Floyd County?" and "Who else did you kill?"

The judgment is reversed.