CASE 52.—PROSECUTION AGAINST JONAS SMITH FOR PA-
    TRICIDE.—April 27, 1909.

# Smith v. Commonwealth

Appeal from McCracken Circuit Court.

W. M. REED, Criminal Judge.

. Defendant convicted and appeals.—Reversed.

1.  Criminal Law—Continuance—Abuse of Discretion.—When the
    indictment against defendant for a capital crime was returned,
    the court set the trial for four days later, and appointed an
    attorney to defend. Counsel, after conference with defendant,
    at once placed subpoenas for certain witnesses in the hands
    of the sheriff, but, when the case was called for trial, applied
    for a continuance because some of the witnesses had not been
    served, some of them were absent, and counsel had not been
    able to prepare a defense. The court, ascertaining that the
    attendance of all the absent witnesses save one could be pro-
    cured by the time they were needed, directed defendant's
    counsel to state the facts which the other witness would tes-
    tify to, and ordered the affidavit to be read to the jury, and
    directed the Commonwealth to admit the truth thereof, and
    refused the continuance. Defendant was convicted and sen-
    tenced to be executed. Held, that the court abused its discre-
    tion, denying the continuance.
2.  Homicide—Voluntary Manslaughter.—If accused unlawfully
    and willfully shot and killed deceased in a sudden affray, or
    in a sudden heat and passion, with a felonious intent to kill
    or if the killing was the direct and natural, though uninten-
    tional, result of a reckless, wanton, or grossly careless use of
    a gun by defendant in struggling with deceased for its posses-
    sion when he knew it was dangerous to life, if handled in that
    manner he would be guilty of voluntary manslaughter.
3.  Homicide—Involuntary Manslaughter—If the shooting and
    death of deceased resulted from the unintentional and careless
    discharge of a gun by defendant in struggling with deceased
    to retain the gun to shoot another, when deceased was trying
    to prevent such shooting, defendant would be guilty of invol-
    untary manslaughter.

JAS. CAMPBELL for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR,
Assistant Attorney General, for the Commonwealth.

Smith v. Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE.—
Reversed.

The appellant, Jonas Smith, was indicted in the
court below for the murder of his father, Amos
Smith.  He was brought to trial within four days of
the return of the indictment, by verdict of the jury
declared guilty as charged, and given the death pen-
alty.  Of that verdict, the judgment entered thereon,
and the refusal of the circuit court to grant him a new
trial he complains; hence this appeal.

The facts leading to and connected with the homi-
cide were few and simple.  It appears from the evi-
dence that appellant and his father were negroes, the
latter being an old man 70 years of age, and that both
lived with a brother of the former and son of the
latter in the city of Paducah.  The evidence showed
appellant to have been a violent and reckless man, and
that he had served a term in the penitentiary, but that
he and his father had always been on good terms.  It
was also shown by the evidence that appellant and one
John Polk, also a negro, were enemies; that shortly
before the killing of Amos Smith appellant had
threatened to kill Polk; and that on the morning of the
day of the homicide appellant purchased a number
of gun cartridges.  It was further shown by the evi-
dence that appellant, about 7 p. m. of that day, met
John Polk on the street near his home, which was
close to that of appellant, and with a shotgun at-
tempted to shoot him, but that he was prevented from
doing so by the act of Polk in grabbing the gun and
calling for help; that the father and two brothers of
Polk, hearing the cries, came to his rescue, and as-
sisted him in holding or trying to take the gun from
appellant.  At that juncture appellant's father, Amos

Smith, hearing the cries and seeing the altercation, appeared on the scene, and at once undertook to as-- sist the Polks in wresting the gun from his son. When he took hold of the gun, the Polks released their hold upon it, and left to him the task of taking it from appellant. In the struggle that continued between appellant and his father for the possession of the gun the weapon was discharged, and the balls entering the body of the latter caused his death. According to the testimony of several of the Polks, during the struggle between father and son over the gun the son in an angry manner, and with an oath, told his father, if he did not release his hold upon the gun, he would shoot him, and this declaration was immediately followed by the discharge of the gun. Appellant denied the making of such a declaration, but admitted the shooting of his father, and claimed that it was purely an accident.

Although numerous grounds were urged for a new trial, but two of them impress us as being worthy of consideration. These are: (1) the failure of the cir-- cuit court to grant the continuance asked by appellant before the beginning of the trial; (2) its alleged failure to properly instruct the jury.

When the indictment was returned, the court informed appellant that the case ought to be disposed of at that term, and ordered that it be set for trial four days later. Being then advised by appellant that he had not secured counsel and was without means to employ one, the court appointed a member of the bar present to defend him. The counsel named accepted the appointment, and, after a hasty conference with appellant, at once procured and placed in the hands of the sheriff subpoenas for certain wit-

nesses whose names appellant furnished him. When the case was called for trial on the day fixed by the court, appellant, through his counsel, informed the court that he was not ready for trial, and moved that the case be continued until the next term of the court, filing in support of the motion the affidavits of himself and counsel, in each of which was set forth the absence of certain witnesses, some of whom had not been served with the subpoenas issued at appellant's instance on the day of the return of the indictment, and the further fact that appellant's counsel had not been able to fully investigate the facts connected with the homicide for which appellant was indicted, or to properly prepare his defense. The court having ascertained that the attendance of all the then absent witnesses, save one, could be procured by the time they would be needed, refused the continuance, and, requiring appellant to state, in the form of an affidavit, the material facts to which the one witness whose attendance could not be procured would testify, ordered that it be read on the trial as the deposition of such witness and admitted by the Commonwealth as true. To the ruling of the court in refusing the continuance the appellant duly excepted, and the trial proceeded with the result previously indicated. Under the circumstances of this case the court's refusal of the continuance asked by appellant was an abuse of discretion. The appellant may be a brutal and dangerous man, but by the showing of the record he is certainly an ignorant one. His penniless and friendless condition, together with his ignorance and the fact that his counsel between the time of his appointment to represent him and the beginning of the trial was almost constantly engaged in discharging

his professional duties in other cases pending in the same court made it well nigh impossible for him to properly prepare appellant's case for trial within the three or four days' time allowed by the court. That appellant's counsel is a capable lawyer all who know him will concede; but, while the record manifests the skill and care with which under the circumstances he conducted appellant's defense, it also shows the embarrassments that inevitably result from the hasty and incomplete preparation of a case. He should have had reasonable opportunities for conferring with his client and the members of his family; reasonable time for looking up witnesses, and ascertaining their testimony, and for making such further preparation as would secure for his client a fair and impartial trial.

We are also satisfied that the jury were not instructed as to all the law of the case. Instruction No. 1 was properly given, for it correctly advised the jury of the law in respect to the crime of murder, and told them in what state of case they would be authorized to find appellant guilty of that crime, and what in that event should be his punishment. We can not, however, approve instructions 2 and 3 as given by the lower court. They fall short of an accurate statement of the law as to voluntary and involuntary manslaughter, and altogether failed to submit to the jury the question of whether the killing of deceased resulted from sudden heat and passion on the part of appellant excited by the interference of the former in trying to wrest from him the gun to prevent the shooting of Polk. "It is essential to the commission of voluntary manslaughter that the homicide should have been willfully and intentionally

committed (i. e., in a sudden affray or in sudden heat
and passion), or under such circumstances as to
strike one at first blush as so reckless and wanton as
to be felonious, though apparently not intended by the
perpetrator." Montgomery v. Commonwealth (Ky.)
81 S. W. 264; 26 R. 356, 1 Bishop's New Crim. Law,
Sec. 314; York v. Commonwealth, 82 Ky. 360, 6 R. 334;
Smith v. Commonwealth, 93 Ky. 318, 20 S. W. 229, 337,
14 R. 260. On the other hand, if the homicide resulted
from the careless and unintentional discharge of
the gun by appellant in the doing of an unlaw-
ful act, such as struggling with his father to re-
tain the gun when the latter was holding it to prevent
him from wrongfully shooting Polk, the act was in-
voluntary manslaughter and punishable at the com-
mon law by fine or imprisonment in jail, or both, in
any amount and for any length of time, in the discre-
tion of the jury. Brown v. Commonwealth, 122 Ky
626, 92 S. W. 542, 28 R. 1335; Ewing v. Common-
wealth (Ky.) 111 S. W. 352, 33 R. 352, 129 Ky. —.
In lieu of instructions 2 and 3, the court should on a
retrial give the following:

Although the jury may believe from the evidence
beyond a reasonable doubt that the defendant shot
and killed deceased with a gun, loaded as in instruc-
tion No. 1 described, if they believe from the evidence
that he committed the act without previous malice,
but shall believe from the evidence beyond a reason-
able doubt that such shooting and killing was unlaw-
fully and willfully done by defendant in a sudden af-
fray or in sudden heat and passion and with the felo-
nious intent to kill deceased, or shall believe from the
evidence beyond a reasonable doubt that the shooting
and killing of deceased, if done by defendant, was the
direct and natural, though unintentional, result of

a reckless, wanton, or grossly careless use or handling, if any, of said gun by defendant in struggling with deceased for its possession, when he knew it was dangerous to life if so handled by him, they should find him guilty of voluntary manslaughter, and fix his punishment at confinement in the penitentiary not less than two nor more than twenty-one years.

If, however, they should believe from the evidence beyond a reasonable doubt that defendant shot and killed deceased with a gun, and that such shooting and death of deceased resulted from the unintentional and careless discharge of the gun by him in doing and unlawful act, such as struggling with deceased to retain the gun for the purpose of shooting John Polk, if he was so struggling for the possession of the gun for such purpose, when deceased was trying to prevent him from shooting said Polk, if he was so trying, they should in that event find defendant guilty of involuntary manslaughter, and fix his punishment at a fine in any amount, or imprisonment in jail any length of time in the discretion of the jury. If the jury believe from the evidence that the killing of deceased by defendant was not murder, voluntary or involuntary manslaughter, as defined in the instructions, but was unintentional and accidental, they should acquit him.

In addition to instruction No. 1, and those herein directed to be given, the circuit court will again give the instructions numbered 4 and 5. The record fails to disclose any error in the admission or rejection of testimony.

On account of the errors indicated, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.