## Lewis v. Commonwealth.

(Decided November 17, 1910.)

### Appeal from Graves Circuit Court.

1. Homicide—Officer Killing Prisoner Trying to Escape—Character of Offense Committed.—Where an officer has arrested one for a misdemeanor who attempts to escape from him, the officer had no right to shoot him to prevent his escape. To determine whether the officer's act in shooting and killing a prisoner trying to escape from him was murder, voluntary manslaughter, involuntary manslaughter, or accidental killing, the distinction between them must be carefully borne in mind.

2. Same—Intention to Kill.—It is not necessary that there should be an intention to kill to constitute voluntary manslaughter when one shoots another with a deadly weapon. If the shooting is intentionally done, and the defendant knew or had reason to know that to shoot as he did would endanger the life of another, and acts recklessly of his safety, an intention to injure may be inferred.

3. Same—Recklessly Killing Another.—Where one recklessly kills

another with a deadly weapon, malice may be implied. It is not necessarily implied. The question is for the jury on all the facts of the homicide.

4. Same.—Where an officer had a prisoner in custody, who ran away from him, and he drew his pistol in an effort to frighten the prisoner into stopping, and undertook to shoot over his head, and had reason to know that to shoot as he did would endanger the prisoner's life, and shot recklessly and without malice, and thereby killed him, he is guilty of voluntary manslaughter. But if he did not intend to shoot at the prisoner at all, and the pistol was discharged involuntarily by reason of his stumbling, then the act would be an accident if the officer was not negligent in carrying the pistol as he did. If he did not exercise reasonable care in handling his pistol and from this cause fired the shot, he was guilty of involuntary manslaughter, though he did not intentionally fire the shot that killed the prisoner.

5. Same—Reasonable Care.—If the officer exercised reasonable care in his effort to capture the prisoner who had escaped from him, and the pistol was accidently fired when the officer did not intend to fire it, and the prisoner was thus shot, this was accidental killing and the defendant should be acquitted.

6. Same.—Reasonable care is such care as may be reasonably expected of a person of ordinary prudence under like circumstances. Reason to know a fact is such as would apprize a person of ordinary prudence of it.

ROBBINS & THOMAS, CROSSLAND & CROSSLAND, SPEIGHT & DEAN, and HOLIFIELD & GARDNER for appellant.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Asst. Attorney General, and MOORMAN & WARREN for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

John Lewis, a policeman in the city of Mayfield, had a warrant of arrest for James Puckett, which had been placed in his hands by the police judge that afternoon for execution. Learning that Puckett was in a restaurant, he went to the restaurant, found Puckett there, called him outside, informed him that he had a warrant for his arrest, and requested him to go with him to the city hall and fix the matter up. The warrant was for selling whisky illegally. Puckett consented to go and they started to the city hall. When they reached Eighth street, another person walked between them, and, Puckett being thus separated from the officer ran down Eighth street. Lewis called to him to halt, but he kept running, and Lewis ran after him. When he had run from twenty-five

to forty feet, he drew his pistol and fired a shot in the air above Puckett's head, for the purpose of frightening him and getting him to stop. He did not stop and a little further on Lewis fired another shot in the air which also had no effect: Puckett continued to run and Lewis after this fired two more shots, one of which grazed Puckett's shoulder, inflicting a slight flesh wound, and the other striking him in the back of the head, and causing him to fall immediately. He died soon after from the wound, and Lewis was indicted for murder. Upon a trial of the case he was found guilty of voluntary manslaughter, and his punishment fixed at confinement in the penitentiary for ten years. From this judgment he appeals.

Lewis was a man of good moral character, and an efficient, faithful officer. He only knew Puckett by sight; there had never been the slightest difference between them. After Puckett was shot Lewis went to him and soon quite a crowd gathered around. When asked who shot the man, according to the witnesses for the Commonwealth, Lewis said he did, and made no explanation. Some of the witnesses say he used the words, "I shot him," or some "I shot at him," others, "I shot." But they all say that he made no explanation. Lewis' own statement is that he was only conscious of firing three shots, but that after it was over he found that there were four empty shells in his pistol; that his purpose was to shoot up and try to stop him, that he did not intend to hit him, that he kept running until he got to the place where there is a gully and there are brick out, and there he stumbled, came very near falling, going forward, that he had his pistol in his hand, a self-acting pistol, as he expressed it, "you just squeeze it and it goes off, it has no hammer;" that his pistol went off then, once he knows, and as he since supposes twice, as the pistol afterwards had four empty shells in it; that when he recovered himself he saw Puckett wobbling around, and went to him and found he was shot. From all the proof we conclude that Puckett when he was shot had run about sixty-five feet less than a square, and that Lewis was about forty or fifty feet from Puckett when he was shot. The defendant proved by a number of witnesses who came up about the same time as those for the Commonwealth, that when he was asked who shot the man, he answered, "I did, but I did not intend to," or, "did not aim to," and that he there explained that Puckett was running from him; that he shot

over his head; that he stumbled and his gun wobbled, and he shot him accidentally.

The court, among other things, by instruction 2, told the jury that if Lewis shot Puckett in sudden affray, or in sudden heat and passion and not in his necessary self-defense, they should find him guilty of voluntary manslaughter; and by instruction 3 he told them if Lewis shot Puckett without any intent to harm him, but the shooting resulted from the careless use or handling of the pistol, they should find Lewis guilty of involuntary manslaughter. He refused to give the jury any instruction on accidental killing. Of all this the defendant complains.

When the officer had arrested Puckett for a misdemeanor and Puckett attempted to escape from him, the officer had no right to shoot him to prevent his escape. (Head v. Martin, 85 Ky. 481; Dilger v. Commonwealth, 88 Ky. 560; Petrie v. Cartwright, 114 Ky. 103.) To determine whether the officer's act in shooting Puckett was murder, voluntary manslaughter, involuntary manslaughter, or an accidental killing, the distinction between them must be carefully borne in mind. In Trimble v. Commonwealth, 78 Ky. 77, the court thus defined involuntary manslaughter:

"In Conner v. Commonwealth, 13 Bush 718, we have said: Involuntary manslaughter is the killing of another in doing some unlawful act, but without an intention to kill, and this may be either when the act is directed against the person killed, or when it is directed against another person or thing and kills one not intended to be hurt."

"Wharton on Homicide, page 35, says it is 'involuntary manslaughter, when a man doing an unlawful act, not amounting to felony, by accident kills another. It differs from homicide excusable by misadventure in this; that misadventure always happens in the prosecution of a lawful act, but this species of manslaughter in the prosecution of an unlawful one. When a person does an act lawful in itself, but in an unlawful manner, this excepts the killing from homicide excusable per infortuniam, and makes it involuntary manslaughter, which is punishable by fine or imprisonment in jail, one or both, at the discretion of the jury."

In York v. Commonwealth, 82 Ky. 368, the court said: "One must be presumed to intend the consequences of an act, reckless in its character of human life, and com-

mitted under circumstances calculated to endanger it. If death results it cannot be properly said either that it was an involuntary homicide or a killing per infortuniam.''

It is not necessary that there should be an intention to kill to constitute voluntary manslaughter when one person shoots another with a deadly weapon. If the shooting is intentionally done, and the defendant knew or had reason to know, that to shoot as he did would endanger the life of another, and acts recklessly of his safety, an intention to injure him may be inferred. (1 Russell on Crimes, 636; Chrystal v. Commonwealth, 9 Bush, 669; Ewing v. Commonwealth, 129 Ky. 237, and cases cited.) Where one recklessly kills another with a deadly weapon, malice may be implied. It is not necessarily implied. The question is for the jury on all the facts of the homicide.

There was no question of self-defense in the case, or of a shooting in sudden heat and passion, or in sudden affray. Instruction 2 therefore should not have been given, as it could only serve to mislead the jury. The officer drew his pistol in an effort to frighten the defendant into stopping; and if his statement is true the shot which killed Puckett was not fired by him intentionally. If the officer undertook to shoot over Puckett's head, and had reason to know that to shoot as he did would endanger his life, and fired the pistol recklessly and without malice, he is guilty of voluntary manslaughter; for the law for the protection of life puts the risk on him who willfully and recklessly does the act endangering it. But if he did not intend to shoot at Puckett at all, and the pistol was discharged involuntarily by reason of his stumbling, then the act would be an accident, if the officer was not negligent in carrying the pistol as he did. If he did not exercise reasonable care in handling his pistol, and from this cause fired the shot, he was guilty of involuntary manslaughter, though he did not intentionally fire the shot that killed Puckett.

In lieu of the second instruction defining voluntary manslaughter, the court should have told the jury in effect that Lewis as a policeman had legally arrested Puckett, but that when Puckett fled from him, Lewis had no right to shoot him to prevent his escape, and that if he fired the shot intending to hit Puckett, or if he willfully and recklessly shot the pistol intending to shoot over his head, but when he knew or had reason to know that to so shoot would endanger Puckett's life, and thus he without

malice aforethought killed Puckett, he was guilty cf vol-untary manslaughter.  In lieu of the third instruction on involuntary manslaughter, the court should have told the jury in effect that if Lewis was not reckless as set out in No. 2, but knowing and having reason to know the danger to Puckett, he failed to exercise reasonable care in handling or shooting his pistol, and so shot Puckett, they should find him guilty of involuntary manslaughter. By another instruction the court should have told the jury that if Lewis exercised reasonable care as set out in No. 3, and the pistol was accidentally fired, when Lewis did not intend to fire it, and Puckett was thus shot, this was an accidental killing, and the defendant should be acquitted.  (Messer v. Commonwealth, 25 R. 700; Blanton v. Commonwealth, 103 S. W., 329; Brown v. Commonwealth, 122 Ky. 626; Ewing v. Commonwealth, 129 Ky. 237.)

Reasonable care is such care as may be reasonably expected of a person of ordinary prudence under like circumstances.  Reason to know a fact is such as would apprise a person of ordinary prudence of it.

The other matters relied on for reversal will not probably arise on another trial, and need not be passed on.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.