## Walker v. Commonwealth.

(Decided October 10, 1930.)

472

JOHN M. THEOBALD for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Jim Walker was indicted in the Carter circuit court for the murder of Jonathan Branham. On the trial of the case he was found guilty of manslaughter, and his punishment fixed at five years' imprisonment. He appeals.

Shortly before August 12, 1929, John Russell and Perlina Click were married, and on that night a number of neighbors and friends congregated at his home for the purpose of givng a "shivaree," or, as they say, a "belling" party. Appellant, Walker, arrived about 7:30 or 8 p. m. He walked into a back room of the house where several people and some children were, and pulled out from under his arm a half gallon of liquor, and said: "Here is some liquor I brought to John Russell, and you can drink some of it." He pitched it down on a bed in the room, and then he commenced putting the children out of the room. Jonathan Branham shoved the door open and walked in; Walker jerked his pistol out and shot through the window. Some words followed between him and Branham, in which Branham told him to put his

pistol away, but nothing further happened. A little later he was in another room of the house; threw his hat down on the floor, had his pistol out like he was going to shoot his hat, but he did not shoot, and went out of the house. He was out in the yard for some time. A number of shots were fired out there by him or other people. Finally he came up on the porch and vomited. After vomiting he laid down on the porch with his feet near the steps, and his head back towards the kitchen door. He remained there some time apparently asleep, some witnesses say thirty minutes, others longer. About 10 o'clock his family concluded to go home. According to the proof for the commonwealth, his son, Ralph, came up to the porch to arouse his father, when Branham said to Ralph: "You had better take that gun away from him, he is liable to shoot somebody." Walker then raised up, grabbed his gun out, snapped it three times, then drew it down and shot Branham, who was standing on the ground at the foot of the steps with one foot on the lower step. According to the proof for the defendant, Branham said, "Ralph get him up and take him home, don't leave him here in that shape." Ralph started to pull him up, and when he pulled him up he had the pistol in his inside coat pocket. The pistol fell out and he went to snapping it. He snapped it twice before Ralph could shove him away. He shoved him back on the porch, and when the defendant fell his elbow struck the porch, and the gun went off and killed Branham. All the proof shows that Walker was very drunk and that there was no previous trouble between him and Branham. They were neighbors.

Besides the indictment against Walker for killing Branham, there were on the docket three other cases against him for violating the prohibition law. The case was tried before a special judge. When it was called, Walker moved to discharge the panel of the jury, because, as he testified, the regular judge had in the presence of the panel read in the hearing of the jury the other three cases as set on the docket, when the murder case was called. But the circuit judge testified that he had simply called the docket in the usual way and had said nothing about the nature of the cases. The court overruled the motion, and, if the testimony of the regular judge was true, there was no misconduct on his

part. It is unnecessary therefore to consider whether this, under the Code, would be grounds for reversal. See Criminal Code of Practice, sec. 281.

The court in its instructions to the jury gave the jury this instruction on voluntary manslaughter:

> "If they believe from the evidence to the exclusion of a reasonable doubt that the defendant shot and killed said Jonathan Branham, if he did so, without malice aforethought by the reckless or grossly careless handling or shooting of the pistol, when he knew, if he did so know, or had reason to know, that the pistol was dangerous to life in the way he used it, although he did not intend to shoot said Jonathan Branham, then the jury will find the defendant guilty of voluntary manslaughter, and fix his punishment at confinement in the State Reformatory for not less than two years nor more than twenty years, in the discretion of the jury."

The appellant complains of the instruction because the court did not define the words, "the reckless or grossly careless handling or shooting of the pistol." But the words were defined by these words in the instruction, "when he knew, or had a reason to know that the pistol was dangerous to life in the way he used it." If the defendant shot his pistol under the circumstances shown by the evidence, such shooting was reckless. On the other hand, if he shot his pistol unintentionally and by accident when he fell, as shown by the testimony for him, it was an accident. This view of the case was properly submitted to the jury by another instruction. The instruction, as given, follows the one drawn by this court in Smith v. Commonwealth, 133 Ky. 532, 118 S. W. 368, and has been often approved in subsequent cases. In Rowe v. Commonwealth, 206 Ky. 803, 268 S. W. 571, and Rains v. Commonwealth, 226 Ky. 173, 10 S. W. (2d) 643, the judgment was reversed for other reasons. In this case no substantial right of the defendant was prejudiced by the form of the instruction. In his affidavit for a continuance, the defendant made this statement. "He says he will prove by the absent witness, Dr. H. T. Sparks, that he is and was well acquainted with the mental condition of the defendant; that the defendant had been struck with lightning, which affected his mental attitude and

that by reason and as the natural effect of such lightning striking him he did not have sufficient mind, when considered in connection with other ailments known by him pertaining to the defendant, to know right from wrong, at the time of the fatal shot complained of in the indictment herein; and that as a result of such stroke of lightning the defendant's mind was so affected as to prevent him from distinguishing on such occasion right from wrong.''

The court refused to allow this to be read to the jury, on the ground that it was incompetent, and of this appellant complains. If H. T. Sparks had been introduced as a witness, he would not have been allowed to give his opinion on the subjects referred to in the affidavit, unless he had first shown that he was qualified to testify as an expert thereon. The affidavit does not show any facts entitling H. T. Sparks to testify as an expert on the questions referred to. We have many men called ''Doctor;'' we have doctors of science, of philosophy, of law, divinity, etc. Veterinaries are also commonly called doctors. The fact that a man is called ''Doctor'' is no evidence that he is competent to testify as an expert on medical questions. The court therefore did not err in refusing to allow this part of the affidavit to be read as the testimony of the witness. There was sufficient evidence of recklessness to take the case to the jury, for under all the evidence appellant willfully snapped the pistol several times before it went off.

Two witnesses for the commonwealth were allowed to prove that about three weeks before the homicide the defendant had made the following statement, in substance: ''He said that when he got to drinking he didn't have no sense, and said whisky was ruining him and said he was all busted up; he said hell, what was the difference I won't be living three weeks, somebody will kill me or I will kill somebody.''

The general rule is that declarations of the defendant indicating that he is in an ugly frame of mind and disposed to commit some crime, though not the particular crime for which he is on trial, are admitted to show the state of his mind. See Underhill on Criminal Evidence, sec. 508. These declarations as to the state of his mind showed that he was in the state of mind of a man who would do just what the commonwealth proved he had done. The defendant's own voluntary statements are competent for this purpose.

It is provided by the Code (Criminal Code of Practice, sec. 271) that a new trial may be granted, if on the whole case the court is satisfied that errors prejudicial to the substantial rights of the defendant occurred on the trial. On a careful examination of the whole record the court finds nothing in it to the prejudice of the defendant's substantial rights.

In Shannahan v. Commonwealth, 8 Bush, 463, 8 Am. Rep. 465, this court, after holding that voluntary drunkenness excuses no man from the commission of crime, added this: "We are not to be understood, however, as determining that the fact of drunkenness in a case like this is incompetent testimony before a jury upon the question of malice. Malice, express or implied, must be proven in order to constitute the crime of murder, and in the absence of this proof no conviction can be had for such an offense; and evidence as to the condition of the accused at the time of the killing, whether drunk or sober, should be permitted to go to the jury, in connection with other facts, in determining the question of malice. What we do adjudge is, that in the trial of a case like this the fact of drunkenness, while it may be a circumstance showing the absence of malice, should not be singled out from the other proof, and the jury told that it mitigates the offense."

This had been followed in Conley v. Commonwealth, 98 Ky. 125, 32 S. W. 285, 17 Ky. Law Rep. 678, and many subsequent cases.

Judgment affirmed.