## Smiley v. Commonwealth.

(Decided October 24, 1930.)

736

J. B. ADAMSON and S. J. SPARKS for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

William Smiley, also known as William Osborne, shot and killed Joe Deskins, a boy about 13 years of age, on July 7, 1929. He was convicted of the crime of willful murder and his punishment fixed at death. On this appeal he seeks a reversal on the following grounds: (1) The verdict is flagrantly against the evidence; (2) the trial court erred in refusing to grant him a continuance because of lack of time for his attorneys to prepare the defense and because of illness of one of the two attorneys employed to defend him; (3) irregularity in the selection of the jury; (4) rejection of competent evidence offered by him; (5) failure of the trial court to instruct the jury on voluntary and involuntary manslaughter; (6) improper argument of the commonwealth's attorney;

(7) failure of the trial court to grant him a new trial because of newly discovered evidence.

Appellant had been rooming and boarding at the home of Rose Deskins, the mother of deceased, for more than a year prior to the homicide. The Deskins home was located just within, or near, the city limits of Catlettsburg in Boyd county. A few days before the homicide Sophia Puckett, a married daughter of Rose Deskins, left her husband and went to the home of her mother. After Sophia Puckett moved into her mother's home, trouble arose between her and appellant, but the cause of it is not clear. Appellant owned an automobile and there is some evidence that Sophia Puckett's husband notified him not to permit Puckett's wife to ride in the automobile, and that after receiving this notice appellant refused to take her in the automobile with him.

On the morning of the homicide two men came to the Deskins home from Kenova, W. Va. Appellant, accompanied by these two men and Mrs. Rose Deskins, started to the country in his automobile, but after they had proceeded some distance Mrs. Deskins became angry at something that occurred, got out of the automobile, and walked home. Appellant returned to the Deskins home and announced that he was going to leave and take his belongings to the home of his father, William Smiley, Sr., who lived in the neighborhood. He claimed that he owned some of the furniture in the house, including a bed and a stove. He requested the deceased, Joe Deskins, to go to the home of William Smiley, Sr., and have him come to the Deskins home to assist appellant in moving his belongings. The father and a brother of appellant, Tom Smiley, who was 14 years of age, went to the Deskins home in response to this request. Appellant, assisted by his father, carried his belongings from the house and loaded them in the automobile, which was parked on the side of the street. Mrs. Deskins had cooked dinner on the stove and it was hot. Appellant procured a bucket of water and poured it on the stove to cool it. It was too heavy to carry and he said he would break it up and sell it for junk. He did break it up with a hammer and loaded the pieces in the automobile. He then returned to the house and walked through the front room into the kitchen, where Mrs. Deskins and Sophia Puckett were. From this point the evidence is in sharp conflict.

738

Sophia Puckett testified that after appellant had removed all his belongings from the house, he returned with a pistol in his hand, walked into the kitchen where her mother was mopping up the water on the floor, and struck her twice on the head with the pistol; that she (Sophia Puckett) attempted to intervene; and that appellant knocked her down and left the house. The deceased, Joe Deskins, was in the house when this difficulty occurred, but left and ran to the home of Mrs. Hensley, who lived next door. Sophia Puckett says that she went to the front window and saw appellant standing by the side of the automobile with the pistol in his hand, and that as her brother ran into the neighbor's yard appellant raised the pistol and fired three times, one bullet striking the deceased in the head killing him almost instantly.

The automobile was between appellant and the deceased and the pistol was fired over the hood of the car. Angie Hensley, Scorcher Davis, Millard Howe, and Donald Miles saw the shooting, and all of them say that appellant fired three shots and that all of the shots were apparently fired in the direction of the deceased. Appellant testified that his last trip into the house was made for the purpose of procuring a pair of shoes that he had left; that he stooped over to look under some article of furniture, when Sophia Puckett struck him in the head with a hatchet and Mrs. Deskins struck him with a beer bottle; that he did not have his pistol at that time but had left it in the automobile; that he struck Mrs. Deskins with his fist, pushed Sophia Puckett aside, and left the house in a dazed condition. When he reached the automobile, he picked up the pistol, and while he was standing in the street with it in his hand he was seized with a paroxysm of pain, and as he lifted his hand to his head the pistol was accidentally discharged. He only remembered hearing it fire once. He claimed that he did not see the deceased at the time the pistol was discharged and did not intentionally shoot at him. Mrs. Deskins, who was introduced as a witness by appellant, Tom Smiley, and William Smiley, Sr., all testified that the third shot struck the hood of the car and that it was this shot that struck and killed the deceased. Some of the witnesses testified that the pistol seemed to be fired at random and that the first two bullets struck in the street apparently some distance from the deceased. Sophia

Puckett admitted that her mother struck the appellant on the head with a beer bottle. It is conceded that he had a severe wound near the temple which bled profusely. Several stitches were required to close it and the physician who dressed it testified that the cut extended to the bone but the skull was not fractured. Immediately after the shooting, appellant got into the automobile, which was driven by his brother, Tom Smiley, to the bridge leading to Kenova, W. Va., where appellant alighted. He claimed that he was on the way to the office of Dr. J. W. Riffe. A few minutes later he was arrested on the street in Kenova, and the arresting officers took him to Dr. Riffe's office, where his wound was dressed.

It was appellant's contention at the trial that the third bullet fired from the pistol struck the hood of the automobile, was deflected, and struck the deceased, and that he did not know deceased had been shot until he was so informed by police officers after his arrest.

From the foregoing statement of facts it is clearly apparent that appellant's contention that the verdict is flagrantly against the evidence is without merit.

During the trial a number of witnesses testified as to the mark on the hood of appellant's automobile which appeared to have been caused by a bullet. One of the police officers who arrested appellant testified that he saw the automobile shortly after the homicide and there was a mark on the hood apparently caused by a bullet. This evidence was not contradicted. Appellant moved that the jury be taken to view the automobile, the court overruled the motion, and it is now insisted that this was error. A number of witnesses had described the mark on the hood of the automobile, and a view of it by the jury would not have enlightened them further. This was a question within the sound discretion of the trial court and, under the circumstances, that discretion was not abused.

The court instructed the jury on willful murder and accidental killing, but gave no instruction on either voluntary or involuntary manslaughter.

It is insisted that the lower court erred in failing to instruct the jury that they should find the appellant guilty of voluntary manslaughter if they believed he killed the deceased in sudden affray or sudden heat and passion, or if they believed the killing resulted from the reckless or grossly careless use of a deadly weapon by appellant. Appellant was not entitled to an instruction

on voluntary manslaughter on the theory that the killing was done in sudden affray or sudden heat and passion. The deceased was not a party to the fight which occurred in the house and had furnished no provocation to appellant. It is doubtful whether appellant would have been entitled to such an instruction had he shot and killed one of the women engaged in the fight, since he had left the house, was out of danger, and probably reasonable time had elapsed for his passions to subside. To reduce homicide from murder to manslaughter because done in sudden heat and passion, there must have been a reasonable or adequate provocation for the crime, and that provocation must have been given by the deceased, except where the deceased is killed while the accused is shooting in sudden heat and passion at a third person. 29 C. J. p. 1146, sec. 132; Shelton v. Commonwealth, 145 Ky. 543, 140 S. W. 670.

We think, however, that under the facts, appellant was entitled to an instruction on voluntary manslaughter on the theory that the killing resulted from the wanton, reckless, or grossly careless use of a deadly weapon. One who kills another without malice by the reckless handling of a pistol, knowing its danger to life when so handled, is guilty of voluntary manslaughter. Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164; Davis v. Commonwealth, 204 Ky. 809, 265 S. W. 316; Speaks v. Commonwealth, 149 Ky. 393, 149 S. W. 850; Smith v. Commonwealth, 133 Ky. 532, 118 S. W. 368. There was some evidence that appellant fired the pistol at random on the public highway and did not intentionally aim it in the direction of the deceased. Some of the eyewitnesses testified that two bullets fired from the pistol struck the surface of the street and the third struck the side of the automobile. While the great weight of the evidence tends to show that appellant deliberately aimed the pistol in the direction of the deceased and fired, yet there is evidence from which the jury might have concluded that the death of the deceased resulted from the reckless or grossly careless firing of the pistol by appellant without any intention on his part to kill the deceased. As appellant was entitled to instructions applicable to every state of case deducible from the evidence, it follows that the trial court erred in failing to give an instruction on voluntary manslaughter.

Under the cases above cited, an instruction on involuntary manslaughter, which is the killing of another person in doing some unlawful act, but without an intention to kill, also should have been given. Hatfield v. Commonwealth, 230 Ky. 630, 20 S. W. (2d) 461; Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Blanton v. Commonwealth, 103 S. W. 329, 31 Ky. Law Rep. 800; Bush v. Commonwealth, 78 Ky. 268. Passing reference is made in appellant's brief to the failure of the trial court to give an instruction on insanity, but there was no evidence warranting such an instruction.

In view of our conclusion that a new trial must be had, a discussion of the other questions raised by appellant is rendered unnecessary.

Judgment is reversed, with directions to grant appellant a new trial.