# Ridings v. Commonwealth.

(Decided Sept. 27, 1932.)

J. G. ROLLINS and H. W. ROLLINS for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Florence Ridings, who was indicted for the murder of Bill Davis, was convicted of manslaughter and her punishment fixed at six years' imprisonment. She appeals.

The facts are these: Appellant lived on Pine street, in Pineville, with her infant daughter and Elan Horn, who was employed to assist in the housework. At the time of the homicide her husband, Bill Ridings, was in jail at London, charged with a violation of the National Prohibition Law. On the day preceding the homicide, appellant, her daughter, and Bill Davis, the deceased, in one car, and Luster Stewart and Elan Horn in another car, went to Tennessee to get some whisky. They procured the whisky, and, on their return between 5 and 6 o'clock on the morning of the homicide, the whisky was carried into appellant's home. Appellant, her daughter, and Elan Horn went into the house while Bill Davis and Luster Stewart went up town. About 9 o'clock on the same morning Bill Davis returned to appellant's home, went to bed, and did not get up until about 5 o'clock p. m. He then came downstairs and appellant fixed him something to eat. According to appellant she took her daughter to the dining room about 7 p. m. to undress her and put her to bed. While there Bill Davis, who had had several drinks, appeared and began flourishing his pistol. She protested and Davis removed the shells from his pistol, saying, "Now it will not hurt anybody." After putting the child to bed, appellant, Bill Davis, Elan Horn, and Joe Lawson, who had come in the house in the meantime, began to dance to the music of the radio. The dancing continued for some time when Lus-

ter Stewart appeared. Later on appellant undressed and put on her pajamas and bathrobe. After Sewart's arrival he and Bill Davis exchanged guns. Finally appellant, Davis, Stewart, Lawson, and Elan Horn were all in one room. Davis was seated in a chair in his shirt sleeves with a pistol in his holster. When Joe Lawson, who said he was going, started out, he said to Davis, "Bill, here is your gun," and Bill said, "No, give it to Luster, me and him exchanged guns." At that time appellant was present. According to Stewart, appellant was standing leaning over on the arm of the chair in which Davis was seated. Stewart was directly in front of Davis. Elan Horn was seated on the davenport. Stewart started to the davenport to sit down. Before he got to the davenport he heard the shot fired. When he turned around the pistol was lying on the floor in front of Bill Davis. When he first noticed appellant she had her hands up to her face. When he arrived appellant appeared to be mad. Joe Lawson says that all the members of the party had been drinking. Bill Davis and Mrs. Ridings seemed to have had the most. Mrs. Ridings told Bill that he should not come into her house and treat her in such a way, or something like that. She appeared to be mad at Elan Horn. Mrs. Ridings stopped the dancing and told Bill to sit down. Bill sat down. She was mad at the time. Bill had a gun which he had gotten from Luster Stewart. He had a gun which Bill Davis had given him. He did not know whether Mrs. Ridings was present at the time. Just before he started to leave Bill said: "Here is you gun, give it to Luster, we have exchanged guns." Mrs. Ridings was then present. He then gave his pistol to Luster. Mrs. Ridings left and put on her pajamas. Mrs. Ridings reached over and got the blue special out of Bill Davis' holster and held it in her hand. She still seemed to be mad. Just as he started to go Mrs. Ridings came around with the pistol and it was pointed straight at Davis. The pistol went off. Mrs. Ridings grabbed Davis around the neck. Elan Horn testified that Florence told Bill that he was making fun of her when he was dancing. She was dancing with Bill Davis just before Florence went out of the room. When Florence returned she did not think that she looked very mad, but thought she was just kidding him. Bill and she were drunk. After Florence had gone out she returned and told Bill to sit down in the chair. She cut the radio off and Bill went over and sat down. Florence just looked like she al-

ways did.  Florence pulled the pistol out of Bill's holster and held it behind her.  She then pointed it toward him and said that he couldn't come into her house and treat her that way.  Bill said she shouldn't be that way.  As soon as the pistol fired, Florence began screaming and trying to get Bill to speak.  There was further evidence to the effect that later on appellant stated to witnesses that she was in the bathroom when the shot was fired.  On the other hand, appellant testified that after Davis removed the shells from his pistol and put the pistol back in the holster she was under the impression that it was still that way.  While Davis was seated in the chair she reached down and pulled the pistol from his holster and it went off.  She never pointed the pistol at Davis, nor did she intend to shoot him.  She would not have hurt him for anything.  She was not mad at anybody.

1.  The first ground urged for reversal is that the names of the witnesses who were examined by the grand jury were not written at the foot of, or on, the indictment as required by section 120, Criminal Code of Practice.  In reply to this contention we need go no further than to say that the objection to the indictment on that ground must be made by motion to quash or set aside the indictment as provided in section 157, Criminal Code of Practice, and as no such motion was made, the right to object was waived.  Sutton v. Commonwealth, 97 Ky. 308, 30 S. W. 661, 17 Ky. Law Rep. 184; Commonwealth v. Brewer, 113 Ky. 217, 67 S. W. 994, 24 Ky. Law Rep. 72.

2.  Specific comment on each of the alleged errors in the admission and exclusion of evidence would extend this opinion to too great a length.  However, we have carefully gone over the entire record and examined each of the rulings complained of.  In many instances appellant's objections were sustained.  In other instances the evidence submitted or excluded was either wholly immaterial, or such that its admission or exclusion was not such as to constitute prejudicial error.

3.  In addition to instructions on murder, involuntary manslaughter, accidental killing, reasonable doubt, etc., the court gave the following instructions:  "If the jury believe from the evidence beyond a reasonable doubt that in Bell county, Ky., and before the finding of the indictment in this case, and on December 12,

26

1931, the defendant Florence Ridings unlawfully, willfully and feloniously killed W. M. Davis by shooting him with a pistol loaded with powder and leaden ball or other hard and explosive substances, of which shooting the said W. M. Davis did then and there immediately die, and it was done in a sudden heat and passion or in a sudden affray and without previous malice; or, if they believe from the evidence beyond a reasonable doubt that the defendant shot and killed said W. M. Davis, if she did so, in said county and state and before the finding of the indictment, without malice aforethought by the reckless or grossly careless handling or shooting of the pistol, when she knew, if she did so know, or had reason to know that the pistol was d a n g e r o u s to life in the way she used it, although she did not intend to shoot said W. M. Davis, then the jury should find the defendant guilty of voluntary manslaughter, and fix her punishment at confinement in the penitentiary for a period of not less than two, nor more than twenty-one years.'' It is insisted that the court failed to give the whole law of the case, in that it did not define the words ''reckless or grossly careless handling or shooting of the pistol,'' and that this was error under the rule laid down in Rowe v. Commonwealth, 206 Ky. 803, 268 S. W. 571; and Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164. The language of the given instruction is the same as that complained of in Walker v. Commonwealth, 235 Ky. 471, 31 S. W. (2d) 721, 722. In holding that the failure of the court to define the terms ''reckless or grossly careless handling or shooting of the pistol'' was not prejudicial error, we said:

''The appellant complains of the instruction because the court did not define the words, 'the reckless or grossly careless handling or shooting of the pistol.' But the words were defined by these words in the instruction, 'when he knew, or had a reason to know that the pistol was dangerous to life in the way he used it.' If the defendant shot his pistol under the circumstances shown by the evidence, such shooting was reckless. On the other hand, if he shot his pistol unintentionally and by accident when he fell, as shown by the testimony for him, it was an accident. This view of the case was properly submitted to the jury by another instruction. The instruction, as given, fol-

lows the one drawn by this court in Smith v. Commonwealth, 133 Ky. 532, 118 S. W. 368, and has been often approved in subsequent cases. In Rowe v. Commonwealth, 206 Ky. 803, 268 S. W. 571, and Rains v. Commonwealth, 226 Ky. 173, 10 S. W. (2d) 643, the judgment was reversed for other reasons. In this case no substantial right of the defendant was prejudiced by the form of the instruction.''

On a reconsideration of the question in the light of the facts of this case, we adhere to the ruling that the failure of the court to define the quoted terms was not prejudicial error.

Judgment affirmed.