## Bolen v. Commonwealth.

(Decided Oct. 10, 1933.)

D. G. BOLEYN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Joe Bolen appeals from a judgment convicting him

of manslaughter, and fixing his punishment at twenty-one years' imprisonment.

The facts are these: Appellant, a young man twenty years old, and his wife lived in a log cabin on Collins' branch of Carr's fork in Knott county. There lived in the community two Neace boys, Bradley and Will, and two Vance boys, Hargis and Estill. Estill was seventeen years of age. These boys were in the habit of coming to appellant's home, playing the banjo, and otherwise enjoying themselves. On the evening of the killing the Neace boys arrived first and were seated before the fire. At that time appellant's wife was out milking the cow. Appellant had a pistol in his shirt containing three cartridges, and handed it to Will Neace to look at. According to Bradley, Will took the pistol, turned the shells out in his hand, then put all the cartridges back, and returned it to appellant. About this time Hargis Vance and Estill, who had gone to the Neace home, came to appellant's home and entered a door to the left or back of appellant. According to Hargis Vance, appellant turned his head and threw the gun on him. He threw up his hands and appellant dropped the gun. Appellant then turned the gun back again on his brother, raised it up, and shot. Before striking his brother the bullet passed through his clothes. On the other hand, appellant testified that Will Neace took the cartridges out and he never saw him put them back. It was dark at the time, and all the light there was came from the fireplace. Will Neace reached him the gun and he took hold of the butt. He saw it was cocked and started to let it down, and turned it away from the Neace boys. He did not know there was a cartridge in the pistol and his finger slipped off the lock and the pistol went off. He did not know that the Vance boys were back in the room. He heard a noise on the porch, but thought it was his wife. After the shooting he went to Rock House, and on the advice of some relatives, who told him that the Vances would kill him, he went to Virginia, stayed awhile, and then returned.

The court instructed on murder, reckless handling of a pistol, involuntary manslaughter, and accidental killing. Appellant's principal complaint is of instruction No. 2, which reads:

"If the Jury do not believe and find as in Instruction No. 1, but do believe and find from the evidence beyond a reasonable doubt that the defendant, Joe Bolen, in Knott County, before the finding of the indictment, willfully, with gross negligence, used or handled a pistol, a deadly weapon loaded with powder and leaden bullets, or other hard and explosive substance, in a way and manner and under circumstances showing a reckless disregard by him of human life, and by reason of such reckless and negligent handling of such deadly weapon, the same was caused to fire and shoot and wound said Estill Vance, and from which shooting and wounding he then and there presently died, you will find the defendant guilty of voluntary manslaughter and fix his punishment at confinement in the penitentiary for not less than two years, nor more than twenty-one, in the discretion of the jury."

The ground of complaint is that the instruction failed to define the words "gross negligence" and "reckless." The rule to be gathered from the opinions is that it is error not to define such words as "gross negligence," "grossly careless," and the like, Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164, unless such terms are in effect defined by submitting to the jury the elements necessary to constitute gross negligence, or to make the act grossly careless. Walker v. Commonwealth, 235 Ky. 471, 31 S. W. (2d) 721. The instruction in question does not define the terms employed, but uses the words "in a way and manner, and under circumstances showing a reckless disregard by him of human life." A case might arise where the quoted words would be sufficient to dispense with the definition of the terms employed, as where the evidence was uncontradicted that the accused knew of the presence of the persons in whose presence he handled or fired the pistol; but in a case like this, where the accused testifies that he turned the pistol away from those sitting by him, and did not know of the presence of the deceased or his brother, the question of his knowledge of the danger becomes material, and the instruction should incorporate the words "when he knew, or had reason to know that it was dangerous to life in the way he used it," or words of similar import. Ewing

v. Commonwealth, 129 Ky. 237, 111 S. W. 352; Smith v. Commonwealth, 133 Ky. 532, 118 S. W. 368; Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Walker v. Commonwealth, supra. In the circumstances here presented the failure to incorporate this element in the instruction was prejudicial error.

As a motive for the crime the commonwealth attempted to prove that both appellant and the deceased were in love with Myrtie Collins. Not a single witness testified to any act or word of either appellant or the deceased that tended in the least to show the existence of any hostility between them. On the contrary, all the witnesses agreed that they were good friends. The evidence shows that Myrtie Collins, who was only fifteen years of age, was appellant's first cousin. Sarah Gibson testified that she saw appellant and Myrtie pass the road a few times together, slapping and boxing with one another, and that she heard Myrtie say that she thought "a right smart of Estill." The last statement was excluded. Hargis Vance testified that as Myrtie was going from school Estill was putting a heel on his shoe and he "hollered" and asked her if he could go up the road with her. She turned around and said, "Come on." He had seen them together a good deal. He was all the time calling and talking to her. On cross-examination he stated that he did not know of his ever "going with her." He did not know of his ever having a sweetheart, except Fred Gibson's girl. Fly Vance, father of Estill Vance, testified that he knew of an attachment between his son and Myrtie Collins, "at least on her part." He had seen them pass and she all the time wanted to say something to him and would pick at him. Another witness was permitted to testify that appellant's wife was jealous of Myrtie. On the other hand, appellant testified that on one occasion he was with a lot of young people who were all cutting up, and he placed his hand on Myrtie's shoulder. He also stated that he and Myrtie were never sweethearts, and that he had never heard that Estill Vance and she were sweethearts. In view of the fact that appellant and deceased were good friends, it is at once apparent that the evidence that he was in love with his fifteen-year-old cousin, or that the deceased was in love with her, is very weak and unsatisfactory. On another trial the court will exclude

the mere opinion of the witness that appellant's wife was jealous of Myrtie. The court will also exclude all evidence bearing on the question, unless it is made. to appear by direct or circumstantial evidence that appellant knew of the devotion between Myrtie and the deceased, and regarded the deceased as a rival. Without such evidence it hardly can be said that jealousy was a motive for the crime.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.