## Pelfrey v. Commonwealth.

(Decided Oct. 19, 1934.)

C. A. NOBLE for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant, indicted by the grand jury of Perry county for the murder of Estill Callahan, upon trial was convicted of voluntary manslaughter and his punishment fixed at ten years' imprisonment. Upon an appeal to this court the judgment was reversed. 247 Ky. 485. 57 S. W. (2d) 474, 475.

At the March, 1934, term of the Perry circuit court appellant was again placed on trial, with the result that

the jury declared him guilty and fixed his punishment at imprisonment for a period of twenty-one years, and from a judgment entered upon said verdict he appeals.

On the former appeal, appellant contended; that the court had committed error in failing to give an instruction on self-defense; to properly instruct on the subject of voluntary manslaughter; to give any instruction on involuntary manslaughter, and to define so-called technical, legal words and terms.

This court reversed the case on the grounds that the court below did not submit to the jury an instruction on involuntary manslaughter. In the course of the opinion the court pointed out that the voluntary manslaughter instruction given on the first trial, should have submitted to the jury its duty in case the jury believed from the evidence beyond a reasonable doubt that appellant had shot and killed Callahan while handling the rifle in a reckless or wanton manner, and suggested that a form for instructions on the trial of this case might be found in Lewis v. Com., 140 Ky. 652, 131 S. W. 517, and Jones v. Com., 213 Ky. 356, 281 S. W. 164, and such suggestion was substantially followed.

The lower court on the second trial gave the amended instruction on voluntary manslaughter; an instruction on involuntary manslaughter and correctly defined the words "reckless," "gross," and "wanton," but did not define the word "careless" nor "ordinary care," which latter definition would have followed the definition of "careless" had that word been defined, and the court's failure to define the word "careless" is one of the complaints.

It does not appear to be necessary to recite the facts developed on the second trial, which are given in some detail in the former opinion, particularly since it is agreed that the facts on both trials were substantially the same. However, upon a review of the transcript of evidence adduced upon the first trial, and a comparison of the same with the transcript in this case, it may be observed that on the former trial the appellant rested his defense merely upon the statement that the rifle was accidentally fired, while on the second trial he claimed accidental killing, and undertook to explain how the accident happened. Again, it may be pointed out that on the first trial, the chief witness for the commonwealth, Nell Collins, did not go into details as to the place

where Callahan was standing at the moment of the shooting, with relation to the stove on which the pan was setting, and at which pan appellant claimed he intended to shoot. Counsel for the commonwealth took pains to, and did, show by this witness on the second trial that at the time the rifle was fired Callahan was seven or eight feet away, and across the room, from where the stove and pan were located. In this particular the evidence may be said to have been somewhat stronger than it was on the first trial.

The general complaint on behalf of appellant is that the court failed to give the jury the whole law of the case. It is urged that reversible error was committed by the court's failure to define the word "careless" as used in the instructions, and that he further erred in giving instruction No. 5 in such terms as to give the state, rather than the defendant, the benefit of the doubt, upon the theory of appellant that instruction No. 5 was a defense instruction.

It is also urged, though not strenuously, that the judge who presided at the trial should have vacated the bench. On this last point it may be said that since no record showing is made that the judge was in any way disqualified, and no motion made seeking the vacation of the bench by him, that question is not before the court.

With regard to the court's failure to define the word "careless," a sufficient answer to appellant's objection is contained in the former opinion, where the court said:

"It is further insisted that the court erred in failing to define the word 'reckless,' as used in instruction given by the court. It has been repeatedly held by this court that a failure to define such terms as 'reckless,' 'gross,' and 'wanton,' when used in instructions in criminal cases, is not a reversible error. It follows that the court did not err in failing to define these terms." (Citing cases.)

Among the cases cited on this conclusion was Walker v. Com., 235 Ky. 471, 31 S. W. (2d) 721, 722, where, in giving a voluntary manslaughter instruction, the court used the words "reckless" and "grossly careless," with reference to the use of the pistol by appellant. The court in holding no error said:

"The appellant complains of the instruction because the court did not define the words, 'the reckless or

grossly careless handling or shooting of the pistol.'
But the words were defined by these words in the
instruction, 'when he knew, or had a reason to
know that the pistol was dangerous to life in the
way he used it.' If the defendant shot his pistol
under the circumstances shown by the evidence,
such shooting was reckless. On the other hand, if
he shot his pistol unintentionally and by accident
when he fell, as shown by the testimony for him, it
was an accident.''

In the instant case, in instruction No. 4, the court
used the words ''wanton,'' ''reckless,'' and ''grossly
careless,'' and followed their use and application with
the words ''when defendant knew it was dangerous to
life to so use, handle or fire the gun at the time and
place he did so.'' Complaint is made of the use of the
word ''careless'' in instruction No. 5, which was the
involuntary manslaughter instruction, particularly be-
cause the same word ''careless'' was used in the volun-
tary manslaughter instruction, and that its use in both
instructions was calculated to confuse the jury. In the
voluntary manslaughter instruction the words ''grossly
careless'' were used in connection with the words ''reck-
less'' and ''wanton,'' followed immediately by the words
set out above. In the involuntary manslaughter instruc-
tion the word ''careless'' alone was used with reference
to the handling of the gun. It is not conceived how the
jury could possibly become confused because of the use
of the words ''careless'' and ''grossly careless'' in the
two instructions, nor can it be said with reference to in-
struction No. 5 that the court's failure to define ''care-
less'' was prejudicial, in the light of the decisions cited
in the first opinion.

It is urged that by the phrasing of instruction No.
5, the court gave the benefit of any doubt to the com-
monwealth, rather than to the appellant. This conten-
tion arises from the use of the words, ''and should be-
lieve from the evidence beyond a reasonable doubt,'' as
placed in the following excerpt from that instruction:

''And should believe from the evidence beyond a
reasonable doubt that the shooting, wounding and
death of the said Estill Callahan resulted from a
careless use and handling of the gun * * * then you
will find the defendant guilty of involuntary man-
slaughter * * *.''

Counsel contends that since the instruction was intended to be and was a defense instruction, the words "beyond a reasonable doubt" shifted the commonwealth's burden. The argument advanced might be sound if in fact instruction No. 5 was purely defensive, but it is not. The taking of human life is homicide. Murder, voluntary and involuntary manslaughter are degrees of homicide. The appellant's defense was that of an accidental killing, and this defense was fully given him in instruction No. 6. The verdict of the jury was supported by proof, and is not one which would shock the conscience of the court or at first blush appear excessive. It is the function of the jury to believe or disbelieve the witnesses, to weigh the evidence, and measure the extent of the punishment. Mullins v. Com., 230 Ky. 624, 20 S. W. (2d) 442; Maggard v. Com., 232 Ky. 10, 22 S. W. (2d) 298.

Finding no error on the part of the lower court, the judgment is affirmed.