## Glover v. Commonwealth.

(Decided June 11, 1935.)

LOUIS I. IGLEHEART for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Eva Glover was indicted for the murder of her husband, Walker Glover, and on her trial was convicted of the crime of voluntary manslaughter, and her punishment was fixed at confinement in the penitentiary for a period of two years. She has appealed.

It is urged that the judgment should be reversed because the verdict of the jury is flagrantly against the evidence and the trial court erred in failing to instruct the jury on the whole law of the case.

On the evening of March 4, 1934, appellant and her husband visited a road house near the city of Owensboro and remained there until 3 o'clock in the morning of March 5 when they returned to their home in the city. The deceased was drunk, and appellant testified that after they returned to their home the deceased went into the kitchen to take another drink of liquor, and she said to him, "If I was you I wouldn't drink any more." Thereupon he became enraged, picked up a kitchen chair, and threw it at her. She ran into the adjoining room and he followed her with a butcher knife in his hand, threatening to kill her. She saw a pistol lying on a table in the room and she picked it up and shot him as he approached her with the butcher knife. Several neighbors and members of the police force who went to the Glover house immediately after the shooting testified to statements made by appellant.

Frank Hinton, a neighbor, testified as follows: "She said she had killed him and she didn't know what made her do it."

W. B. Drury, a policeman, testified:

"I asked her how came her to do it and she said he jumped on her some way and was fighting her, or was going to fight her, and they got into a scuffle some way or 'nother and she said she didn't aim to shoot him and she didn't know why the gun went off. That is what she told me."

Delbert Glenn, coroner of Daviess county, was called to the Glover home immediately after the shooting and, when asked whether appellant made any statement to him at that time, said:

"I didn't know Mrs. Glover or any of them except

Walker, but I knew Mrs. Glover's father, and Mrs. Glover said he came in drunk and abused her and said a lot of hard things she couldn't stand she shot him and she did not aim to and did not know the gun would go off."

She stated to W. P. Morris, a member of the police force, that "she did not aim to shoot her husband."

R. S. Wiekel was asked if she made any statement to him concerning the shooting, and he answered:

"She said he cursed her and called her ugly names and she reached on the mantel to get the pistol and it went off accidentally."

All of these witnesses were introduced by the commonwealth.

Al Owen, appellant's father and a witness in her behalf, testified as follows on cross-examination:

"Q. Did you hear the statement your daughter made to the police and coroner when they came up there? A. Yes sir, I heard some of it.

"Q. Did you hear her say it was an accident and she did not aim to kill him? A. She said she didn't aim to kill him.

"Q. Did you hear her say she didn't think that pistol would fire? A. I heard her say he grabbed her hand and it wouldn't have gone off if it he hadn't."

The evidence shows that the deceased was quarrelsome and abusive when drunk, and on several occasions had threatened to kill appellant, and on at least two occasions prior to the homicide had seriously injured her. On her trial appellant claimed that she shot her husband in her necessary self-defense, but the commonwealth introduced evidence which tended to show that appellant stated immediately after the homicide that the shooting was accidental. This, of course, was in contradiction of her statement at the trial that she shot the deceased in her necessary self-defense. It is admitted that the shooting occurred during an altercation between her and her husband, and, as the evidence on the issue of self-defense was conflicting, the question was one for the determination of the jury. Under all

the circumstances, it might well have concluded that appellant shot, not in her self-defense, but in sudden heat and passion or in sudden affray. There was evidence which tended to contradict the testimony of appellant on the trial that the shooting was done in her necessary self-defense, and the question of her guilt or innocence was, therefore, properly submitted to the jury. The evidence was sufficient to sustain its verdict.

Appellant contends, however, that she was entitled to an instruction on involuntary manslaughter and also accidental shooting. When there is evidence from which the jury might find the existence of facts constituting involuntary manslaughter it becomes the duty of the court to instruct them as to the law of the offense. Bush v. Commonwealth, 78 Ky. 268. Involuntary manslaughter is the killing of another person in doing some unlawful act, but without an intention to kill. It was the theory of the commonwealth that the appellant shot and killed her husband during a heated quarrel. If, at a time when appellant did not have reasonable grounds to believe that she was in danger of death or great bodily harm at the hands of the decedent, she picked up a pistol and pointed it at him and it was discharged, though she did not intend to kill him, the killing occurred while she was engaged in doing an unlawful act and she was guilty of involuntary manslaughter. Smiley v. Commonwealth, 235 Ky. 735, 32 S. W. (2d) 51; Hatfield v. Commonwealth, 230 Ky. 630, 20 S. W. (2d) 461; Burchett v. Commonwealth, 247 Ky. 21, 56 S. W. (2d) 571; Smith v. Commonwealth, 133 Ky. 532, 118 S. W. 368; Pash v. Commonwealth, 146 Ky. 390, 142 S. W. 700; McGeorge v. Commonwealth, 145 Ky. 540, 140 S. W. 691; Hunn v. Commonwealth, 143 Ky. 143, 136 S. W. 144; Clem v. Commonwealth, 213 Ky. 265, 280 S. W. 1104. The evidence for the commonwealth showed that appellant stated immediately after the killing in the presence of a number of witnesses that she did not know how the pistol happened to be discharged, and that she had no intention to kill her husband. Under the circumstances, an instruction on involuntary manslaughter should have been given.

There was likewise evidence tending to show that the shooting was accidental, and the Attorney General concedes that the trial court erred in failing to give an instruction on accidental killing. Appellant's testimony

to the effect that she shot her husband in her necessary self-defense does not deprive her of the right to have the jury instructed upon the question.as to whether the shooting was accidental where there was evidence to support such a theory. Morris v. Commonwealth, 46 S. W. 491, 20 Ky.·Law Rep. 402; Gatliff v. Commonwealth, 107 S. W. 739, 32 Ky. Law Rep. 1063; Elliott v. Commonwealth, 152 Ky. 791, 154 S. W. 25; Combs v. Commonwealth, 196 Ky. 804, 246 S. W. 132; McClerkin v. Commonwealth, 221 Ky. 689, 299 S. W. 570.

For the reasons indicated, the judgment is reversed, with directions to grant appellant a new trial.